STATE OF NEBRASKA, APPELLEE, V. ANDREW H. COZZENS ET AL., APPELLANTS.

490 N.W.2d 184

Filed September 25, 1992.    Nos. S-91-494 through S-91-502.

Peter C. Bataillon, of Sodoro, Daly & Sodoro, for appellants.

Herbert M. Fitle, Omaha City Attorney, and Gary P. Bucchino, Omaha City Prosecutor, and Richard L. Dunning for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

The crucial question presented in these appeals is whether a defendant, prosecuted in a state court for an offense committed as an expression of the defendant's moral belief or judgment, can invoke a statutory defense which, if allowed, prevents another's exercising a right recognized under the U.S. Constitution as interpreted by the U.S. Supreme Court.

Mary C. Adam, Patricia A. Beninato, Andrew H. Cozzens, Lawrence J. Donlan, Winifred I. Kaipust, Sharon T. McKee, Gerald V. Rush, Joseph C. Taphorn, and Andrew W. Watson appeal from their convictions for criminal trespass, in violation of Omaha Mun. Code, ch. 20, art. VI, § 20-155 (1990) (OMC § 20-155): "**Request to leave.** It shall be unlawful for any person to fail or refuse to leave the property of another person after being notified to do so by the owner, occupant or person in control thereof, or by his agent." A copy of the ordinance was introduced in the defendants' consolidated bench trials. Each of the defendants was a member of a group who appeared at the Women's Medical Center in Omaha and attempted to prevent women from entering the clinic, which supplied gynecological services, including termination of pregnancy by abortion. Each defendant, in cases consolidated for disposition in this court, contends that the county court for Douglas County, as the trial

court, erred by (1) refusing to grant a jury trial as requested by each defendant and (2) disallowing the justification or "choice of evils" defense, Neb. Rev. Stat. § 28-1407 (Reissue 1989), to each defendant.

## BACKGROUND FOR CONVICTIONS

The Women's Medical Center, located at 4930 L Street in Omaha, is a medical clinic that offers various gynecological services, including abortions. The clinic's boundaries, or property lines, were confirmed by a survey before the defendants' appearance at the clinic and were marked by a white line. A perimeter chain link fence enclosed the clinic on all sides of the building except the front, which faced L Street. A gate in the fence provided access to the clinic's driveway and parking lot. The clinic had two entrances: the front door on L Street and another door for entry from the clinic's parking lot. On the morning of September 19, 1990, when the defendants arrived at the clinic, the clinic's staff shut and secured the driveway gate so that the only entrance into the clinic was through the front door.

On their arrival, the defendants formed a human blockade in front of the clinic to prevent access by the clinic's patients. Responding to the assembly, a lawyer, who represented the clinic and the owner of the clinic site, summoned police. The emergency response unit of the Omaha Police Division arrived and was met by the clinic's lawyer, who asked the police to remove the assemblage from clinic property. An officer of the police unit generally announced to the assembly that the group must disperse and leave the clinic's premises and that on refusal to leave, anyone remaining on the premises would be arrested for violation of OMC § 20-155. Sufficient time was allowed for the defendants to leave the premises. The clinic's lawyer and a police officer contacted each of the defendants and requested each defendant's departure from the premises. When the defendants refused to leave as requested, they were arrested and charged with violating OMC § 20-155, the "request to leave" ordinance.

## REQUESTS FOR JURY TRIALS AND TRIALS

At arraignment, the court denied each defendant's request

for a jury trial.

During their trials, the defendants offered testimony from several eminent physicians who specialize in gynecology and family practice. These physicians testified that human "life begins at conception" and that an abortion kills a human being. Some physicians described and medically evaluated the various methods of abortion and harmful aftereffects to women who have had abortions. A psychiatrist testified about "post-abortion syndrome" and the psychological harm to a woman who has had an abortion.

Each of the defendants testified about his or her belief, based on information from physicians such as those who had testified, that human life begins at conception and that abortion is a serious moral wrong. The clinic was the site for the largest number of abortions in Omaha, and the defendants were aware that Wednesday, and therefore the day of the blockade, was one of the days on which abortions were scheduled at the clinic. The defendants considered a human blockade to be the only means to prevent entry into the clinic and provide time during which a woman might obtain counseling and reconsider whether to have an abortion. One defendant, Kaipust, testified that on the morning of the blockade, she had encountered several women who were about to enter the clinic for abortions and she had attempted to counsel them and offer information concerning alternatives to abortion. Other defendants recounted their seeing cars with women passengers stop in front of the clinic and, in view of the blockade, drive away.

Each defendant acknowledged that he or she had been requested to leave the clinic's premises, but refused to leave and was arrested for violating the ordinance previously mentioned. When arrested, the defendants were on the clinic's premises. As a result of the blockade or demonstration, the clinic was closed briefly, but reopened in the course of the day. Of the 30 abortions scheduled at the clinic on the morning of September 19, 1990, 16 were performed, and 14 were rescheduled due to the blockaded entry into the clinic.

The trial court disallowed the justification or choice of evils defense, that is, the contention that the harm from abortions is

greater than the harm from the defendants' violating OMC § 20-155, and therefore prevention of the greater harm justifies the trespass charged against each defendant. The court found each defendant guilty of violating OMC § 20-155 and sentenced each defendant to 1 day's incarceration in the Douglas County Correctional Center.

## JURY TRIAL

Each defendant's first assignment of error concerns the trial court's refusal to grant a jury trial on the charge of violating OMC § 20-155, which is punishable by imprisonment not to exceed 6 months, a fine not to exceed $500, or both such imprisonment and fine.

The Nebraska Constitution states: "The right of trial by jury shall remain inviolate," Neb. Const. art. I, § 6, and "[i]n all criminal prosecutions the accused shall have the right to . . . a speedy public trial by an impartial jury," Neb. Const. art. I, § 11.

Notwithstanding the preceding constitutional provisions for a jury trial, not every criminal charge is triable to a jury. " 'There is no constitutional right to trial by jury for petty offenses carrying a maximum sentence of 6 months or less.' " *State v. Kennedy*, 224 Neb. 164, 172, 396 N.W.2d 722, 727 (1986). Accord, *State v. Miller*, 226 Neb. 576, 412 N.W.2d 849 (1987); *State v. Lynch*, 223 Neb. 849, 394 N.W.2d 651 (1986). Consequently, the right to a jury trial, protected by the Nebraska Constitution, is the right to a jury trial for a serious offense, that is, an offense punishable by incarceration for more than 6 months. See, *State v. Miller, supra*; *State v. Lynch, supra*; *State v. Kennedy, supra*. Since conviction on the trespass charge against each defendant was not punishable by incarceration for more than 6 months, the defendants were not entitled to jury trials, pursuant to the Nebraska Constitution.

Also, the U.S. Supreme Court, considering whether a defendant is entitled to a jury trial pursuant to U.S. Const. amends. VI and XIV for an offense punishable by incarceration for less than 6 months, stated in *Blanton v. North Las Vegas*, 489 U.S. 538, 543, 109 S. Ct. 1289, 103 L. Ed. 2d 550 (1989):

Although we did not hold in *Baldwin* [*v. New York*, 399

U.S. 66, 90 S. Ct. 1886, 26 L. Ed. 2d 437 (1970)] that an offense carrying a maximum prison term of six months or less automatically qualifies as a "petty" offense, and decline to do so today, we do find it appropriate to presume for purposes of the Sixth Amendment that society views such an offense as "petty." A defendant is entitled to a jury trial in such circumstances only if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a "serious" one. This standard, albeit somewhat imprecise, should ensure the availability of a jury trial in the rare situation where a legislature packs an offense it deems "serious" with onerous penalties that nonetheless "do not puncture the 6-month incarceration line." [Quoting from the brief for petitioners.]

Further, the Nebraska Legislature has enacted Neb. Rev. Stat. § 25-2705 (Reissue 1989), which in pertinent part provides: "Either party to any case in county court, except criminal cases arising under city or village ordinances, traffic infractions, other infractions . . . may demand a trial by jury." Therefore, apart from constitutional considerations, § 25-2705 precludes a defendant's obtaining a jury trial in a prosecution for violation of a municipal ordinance. Additionally, under existing law, a court has no discretion to grant a jury trial in a prosecution for violation of a municipal ordinance, notwithstanding a defendant's demand for a jury trial. See *State v. Blair*, 230 Neb. 775, 433 N.W.2d 518 (1988).

Accordingly, since each defendant was not entitled to a trial by jury on the charge of violating OMC § 20-155, a municipal ordinance, the county court properly refused each defendant's request for a jury trial.

## CHOICE OF EVILS DEFENSE

The justification or choice of evils defense is expressed in § 28-1407, which provides:

(1) Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable

if:

(a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;

(b) Neither sections 28-1406 to 28-1416 nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(c) A legislative purpose to exclude the justification claimed does not otherwise plainly appear.

(2) When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for his conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

The justification or choice of evils defense, authorized by § 28-1407, reflects the Nebraska Legislature's policy decision that certain circumstances excuse conduct that would otherwise be criminal. Therefore, the justification or choice of evils defense operates to legally excuse conduct that would otherwise subject a person to criminal sanctions. Professor LaFave describes the defense: "[I]f the harm which will result from compliance with the law is greater than that which will result from violation of it, [a person is] justified in violating it." 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 5.4 at 627 (1986). As a rationale for the justification or choice of evils defense, LaFave suggests that "the law ought to promote the achievement of higher values at the expense of lesser values, and sometimes the greater good for society will be accomplished by violating the literal language of the criminal law." *Id.* at 629.

Consequently, the justification or choice of evils defense requires that a defendant (1) acts to avoid a greater harm; (2) reasonably believes that the particular action is necessary to avoid a specific and immediately imminent harm; and (3) reasonably believes that the selected action is the least harmful alternative to avoid the harm, actual or reasonably believed by the defendant to be certain to occur. See, *State v. Reed*, 205

Neb. 45, 286 N.W.2d 111 (1979); *State v. Graham*, 201 Neb. 659, 271 N.W.2d 456 (1978); *State v. Schroeder*, 199 Neb. 822, 261 N.W.2d 759 (1978); *State v. Ralls*, 192 Neb. 621, 223 N.W.2d 432 (1974).

## FACTUAL AVAILABILITY OF JUSTIFICATION DEFENSE

In the present appeals, assuming for the time being that abortion before fetal viability is a harm or evil within the meaning of § 28-1407, the defendants must factually establish that their actions in blockading the clinic were efforts to prevent a specific and immediate harm to at least one reasonably identifiable person affected by an abortion at the Women's Medical Center on September 19, 1990. A generalized belief, even if apparently well-founded, that abortions might occur at the clinic at an unspecified time and might involve an unidentified woman or women is insufficient to supply a factual basis for application of the justification or choice of evils defense.

Only Kaipust established that she had personal knowledge, gained through her contacts with women who were about to enter the clinic, that abortions were likely to be performed on the morning of the blockade. Consequently, Kaipust's attempt to block the clinic's entrance and prevent these identifiable women from entering for abortions factually supports availability of the justification or choice of evils defense for Kaipust.

However, the other eight defendants have failed to establish that they are entitled to the justification or choice of evils defense under the facts. These eight defendants expressed a general belief that abortions were performed at the clinic, but they did not establish a factual basis for their belief that an imminent threat of harm was about to occur to a reasonably identifiable person. Notwithstanding their claim that abortions were scheduled on September 19, 1990, none of the defendants, except Kaipust, knew whether any woman about to enter the clinic was seeking an abortion or whether any such woman was seeking some other gynecological service available at the clinic. Accordingly, other than Kaipust, the defendants did not

factually establish that they were acting to prevent infliction of a specific and immediate harm to a reasonably identifiable victim. Therefore, although the defendants were demonstrating their general moral opposition to abortions at the clinic, none, except Kaipust, were acting to prevent a specific and immediately imminent harm to a particular person. Also, any after-the-fact knowledge of the defendants' does not justify their prior conduct, because a defendant's belief concerning a harm must exist simultaneously with the action taken to avoid or prevent the harm.

Hence, the defendants, except Kaipust, failed to demonstrate a factual basis for availability and application of the justification or choice of evils defense to the prosecutions for violating OMC § 20-155. The county court correctly disallowed the defense for those defendants.

## LEGAL APPLICATION OF
## JUSTIFICATION DEFENSE

Apart from the factual deficiencies precluding the justification or choice of evils defense, the truly dispositive issue is whether any of the defendants has a legal basis to claim the defense. One commentator has suggested that, for availability of the defense, a defendant's responsive criminal conduct must relate only to a legally protected interest, that is, "[t]he phrase 'legally protected interest' " "is to be interpreted broadly to include all interests that the community is willing to recognize and that are not specifically denied recognition by the legal system." 2 Paul H. Robinson, Criminal Law Defenses § 124(b)(1) at 47 (1984).

> The evil, harm, or injury sought to be avoided, or the interest sought to be promoted, by the commission of a crime must be legally cognizable to be justified as necessity. "[I]n most cases of civil disobedience a lesser evils defense will be barred. This is because as long as the laws or policies being protested have been lawfully adopted, they are conclusive evidence of the community's view on the issue."

*State v. Sahr*, 470 N.W.2d 185, 191 (N.D. 1991) (quoting from Robinson, *supra*, § 124(d)(1) at 52). "[I]t is commonly

conceded that the exercise of a moral judgment based upon individual standards does not carry with it legal justification or immunity from punishment for breach of the law." *United State v. Kroncke*, 459 F.2d 697, 703 (8th Cir. 1972). See, also, *U.S. v. Schoon*, 955 F.2d 1238 (9th Cir. 1991) (justification or choice of evils defense is unavailable for a defendant's criminal conduct responsive to governmental activity with which the defendant disagrees); *State v. Thomas*, 103 N.C. App. 264, 405 S.E.2d 214 (1991) (justification or choice of evils defense is inapplicable to excuse criminal activity of those who disagree with the decisions and policies of the lawmaking branches of government); *Dayton v. Drake*, 69 Ohio App. 3d 180, 590 N.E.2d 319 (1990) (justification or choice of evils defense is unavailable to exonerate criminal activity as a form of civil disobedience, no matter how laudable the defendant's goal).

Thus, availability and applicability of the justification or choice of evils defense require that a defendant's conduct be responsive to a legally recognized harm, and the defense may not be used to justify or excuse criminal activity as an expression of disagreement with decisions by a branch of government. Sincere belief and fervor, resulting in impatience with the alternative and frequently time-consuming process for change in a democracy subject to a constitution, do not supply a legal basis for the justification or choice of evils defense.

## STATE ACTION

The defendants contend that *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973), is irrelevant to their cases because their conduct involves only interaction by private individuals and does not implicate state action. In *Roe v. Wade*, the U.S. Supreme Court decided that a woman has a fundamental right, before viability of a fetus, to choose whether to terminate her pregnancy, a personal right of privacy expressed as follows:

> This right of privacy, whether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, as we feel it is, or, as the District Court determined, in the Ninth Amendment's reservation of rights to the people, is broad enough to

encompass a woman's decision whether or not to terminate her pregnancy. . . .
. . . .
We, therefore, conclude that the right of personal privacy includes the abortion decision . . . .
410 U.S. at 153-54.

Recently, in *Planned Parenthood v. Casey*, ____ U.S. ____, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992), issued June 29, the U.S. Supreme Court reaffirmed a woman's constitutional right of privacy "to terminate her pregnancy in its early stages," 112 S. Ct. at 2803, and constitutional protection for a woman's right

> to choose to have an abortion before viability and to obtain it without undue interference from the State. Before viability, the State's interests are not strong enough to support a prohibition of abortion or the imposition of a substantial obstacle to the woman's effective right to elect the procedure.

112 S. Ct. at 2804. In *Casey*, the Court continued: "Constitutional protection of the woman's decision to terminate her pregnancy derives from the Due Process Clause of the Fourteenth Amendment. . . . It is a promise of the Constitution that there is a realm of personal liberty which the government may not enter." 112 S. Ct. at 2804-05. Further, in *Casey*, the Court observed:

> Men and women of good conscience can disagree, and we suppose some always shall disagree, about the profound moral and spiritual implications of terminating a pregnancy, even in its earliest stage. Some of us as individuals find abortion offensive to our most basic principles of morality, but that cannot control our decision. Our obligation is to define the liberty of all, not to mandate our own moral code. . . .
>
> . . . .
> Our law affords constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education. . . . These matters, involving the most intimate and personal choices a person may make in a lifetime,

choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment.

112 S. Ct. at 2806-07. Finally, the Court stated: "We conclude the line should be drawn at viability, so that before that time the woman has a right to choose to terminate her pregnancy." 112 S. Ct. at 2816.

In view of a woman's constitutionally protected right of privacy concerning an abortion, several courts throughout the United States have concluded that the justification or choice of evils defense is unavailable to a defendant who seeks, by trespass during a demonstration or protest, to physically obstruct entry into an abortion clinic and prevent a woman from exercising her constitutional right to a chosen abortion at the clinic; for example, see *State v. Sahr*, 470 N.W.2d 185, 192 (N.D. 1991): "It is [the defendants'] interference with other persons' rights to engage in legally protected acts that makes the defendants' criminal trespasses unjustifiable." See, also, *Cleveland v. Municipality of Anchorage*, 631 P.2d 1073 (Alaska 1981); *People v. Garziano*, 230 Cal. App. 3d 241, 281 Cal. Rptr. 307 (1991); *Egger v. State*, 817 S.W.2d 183 (Tex. App. 1991); *State v. Thomas*, 103 N.C. App. 264, 405 S.E.2d 214 (1991); *Com. v. Wall*, 372 Pa. Super. 534, 539 A.2d 1325 (1988); *Sigma Repro. Health Cen. v. State*, 297 Md. 660, 467 A.2d 483 (1983).

A legal rationale for the preceding cases may be found in an examination of some federal decisions. In *Gilmore v. City of Montgomery*, 417 U.S. 556, 94 S. Ct. 2416, 41 L. Ed. 2d 304 (1974), the U.S. Supreme Court observed that protection of the 14th Amendment concerning state action "applies *de facto* as well as *de jure* because '[c]onduct that is formally "private" may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action.' " 417 U.S. at 565 (quoting from *Evans v. Newton*, 382 U.S. 296, 86 S. Ct. 486, 15 L. Ed. 2d 373 (1966)). Later, in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 933, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982), the Court stated that "private use of the challenged state procedures with the help of state officials constitutes state action for purposes of the Fourteenth

Amendment."

The justification or choice of evils defense, expressed in § 28-1407, exists through legislative action of the State of Nebraska. The defendants seek to carry this statutory defense into judicial reality through application in a Nebraska court. In that manner, the defendants endeavor to bring state legislative action into a Nebraska courtroom to excuse their conduct as private citizens prosecuted for criminal trespasses designed to prevent a woman's exercising her constitutional right of privacy, existing under the 14th Amendment to the U.S. Constitution, for an abortion. Thus, the defendants' conduct is inextricably interwoven with state action to such a degree that the justification or choice of evils defense would be tantamount to use of state procedures and state officials to obtain formally and essentially private moral objectives and, therefore, would constitute state action within the purview of the 14th Amendment to the U.S. Constitution. In the present cases, if the justification or choice of evils defense is available in a prosecution for a trespass that effectively prevented, or was designed to prevent, the exercise of a woman's 14th Amendment right, and therefore a protected right under the U.S. Constitution, to terminate her pregnancy before viability of a fetus, state action is necessarily implicated in denying a right of privacy protected by the 14th Amendment to the U.S. Constitution. See, *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973); *Planned Parenthood v. Casey*, ＿＿＿ U.S. ＿＿＿, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992). While the present appeals pertain to individuals' moral beliefs and judgments expressed by conduct at an abortion clinic, the justification or choice of evils defense necessarily relates to other situations involving exercise of a constitutionally guaranteed right. For example, if an individual's moral belief or judgment justifies commission of an offense that prevents exercise of a constitutionally protected right, then a person, believing that a religious sect's dogma is a morally reprehensible path to damnation, might escape punishment for arson in burning down a house of worship where the particular dogma was being disseminated under the First Amendment protection for freedom of religion or speech. The preceding illustration

involves an extraordinary situation, but validity of a rule is sometimes tested by application in exceptional circumstances. Hence, in relation to the justification or choice of evils defense, an offense committed as an expression of a moral belief or judgment preventing exercise of a First Amendment right is neither more nor less constitutionally repugnant than an offense preventing exercise of a 14th Amendment right, such as that implicated in the present appeals.

Consequently, we hold that the justification or choice of evils defense, authorized by § 28-1407, is unavailable in a prosecution for an offense, based on conduct as an expression of a defendant's moral belief or judgment, committed to prevent another's exercising a constitutional right or committed to deny another's constitutionally protected right.

In deciding that the justification or choice of evils defense is legally unavailable to the defendants in the present appeals, we are neither impugning the integrity of the defendants nor ignoring their obviously sincere moral beliefs. As the majority of the Court noted in *Planned Parenthood v. Casey, supra*:

> Men and women of good conscience can disagree, and we suppose some always shall disagree, about the profound moral and spiritual implications of terminating a pregnancy, even in its earliest stage. Some of us as individuals find abortion offensive to our most basic principles of morality, but that cannot control our decision. Our obligation is to define the liberty of all, not to mandate our own moral code.

112 S. Ct. at 2806.

However, since the 14th Amendment to the U.S. Constitution guarantees a woman's right of privacy to choose an abortion, as enunciated in *Roe v. Wade, supra*, and reaffirmed by *Planned Parenthood v. Casey, supra*, that same 14th Amendment, interpreted by the U.S. Supreme Court, governs the decisions of this court, for we are bound to apply the 14th Amendment irrespective of Nebraska law or individual beliefs.

Under the circumstances, the county court correctly disallowed the justification or choice of evils defense in the defendants' trials.

## CONCLUSION

Since the county court committed no error concerning the defendants' trials, we affirm the district court's judgments which affirmed the judgments of defendants' convictions in the county court.

AFFIRMED.