IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. DLOUHY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

RUSSELL R. DLOUHY, APPELLANT.

Filed April 7, 2015.   No. A-14-086.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Jon Bruning, Attorney General, and Melissa R. Vincent for appellee.

MOORE, Chief Judge, and IRWIN and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Russell Dlouhy appeals his conviction for possession of a firearm by a prohibited person. On appeal, Dlouhy asserts that the district court erred in failing to instruct the jury on his proposed defense of justification or choice of evils and in sustaining hearsay objections to proffered testimony. We find no merit to Dlouhy's assertions on appeal, and we affirm.

## II. BACKGROUND

Dlouhy was charged by Information with possession of a firearm by a prohibited person. The Information alleged that Dlouhy had committed the offense "on, about, or between 29 March 2013 and 25 April 2013."

The events giving rise to this action occurred in March and April 2013. On March 30, the Lancaster County Sheriff's Department received a report regarding a dog being shot. Deputy Jon Osterhaus responded to the call and spoke with tenants of Russell Dlouhy about the incident. Osterhaus was told that the tenants had encountered a dog, that the dog had growled at them, and that they had gone inside the residence and informed Dlouhy about the dog. The tenants indicated that they had gone inside the residence before telling Dlouhy about the dog. Dlouhy told the tenants that he would take care of the matter. Dlouhy's tenants told Osterhaus that they had not heard or seen a gun at that time, but when Osterhaus spoke with Dlouhy on the telephone, Dlouhy informed Osterhaus that he had shot the dog with a .22 rifle, that the dog had died, and that he had then drug the dog to a nearby ditch.

Osterhaus testified that he ascertained that Dlouhy was not a convicted felon, so Osterhaus believed that Dlouhy was legally entitled to carry a firearm. Osterhaus also testified that in Lancaster County there is a right to "legally put down" a dog that enters a person's property in an aggressive manner.

In early April 2013 the Lancaster County Sheriff's Department received a telephone call from a caller who indicated that Dlouhy is a person prohibited from possession a firearm. Deputy Chad Bryant testified that he discovered that Dlouhy's criminal history included an attempted domestic violence offense. Bryant testified that he consulted with the county attorney's office and was told that because the offense involved domestic violence Dlouhy was prohibited from possessing a firearm.

Bryant testified that he then spoke with Dlouhy's tenants, who indicated that Dlouhy had told them that he was not supposed to be in possession of a firearm and that Dlouhy had placed firearms into the tenants' vehicle. The tenants indicated that Dlouhy had told them to claim ownership of the firearms "if deputies do show up" and not to tell law enforcement that the firearms were Dlouhy's.

Bryant testified that he made contact with Dlouhy, and Dlouhy acknowledged that he knew he was not supposed to possess a firearm, but indicated that "things had been very difficult lately" and indicated that he had "just [been] trying to protect the [tenants]."

During a subsequent interview at the jail, Dlouhy informed law enforcement officers that the firearms were, at that time, located in a garage at another property owned by Dlouhy. Upon going to that location, officers located two rifles exactly where Dlouhy had indicated they would be.

Bryant testified on cross-examination that nobody had seen Dlouhy with the firearms prior to the dog being shot, that no investigation was made concerning the history of the dog, and that the case had been "essentially closed" when Dlouhy had confirmed that he had shot the dog with a firearm. Bryant testified that no part of the investigation had involved trying to determine whether the shooting "would have been justified."

After the State rested, Dlouhy called witnesses on his behalf. One of those witnesses was another of Dlouhy's tenants, Glenn Smallwood. Smallwood testified that he and Dlouhy had previously had conversations about "a menacing dog or animal . . . on the property." When Dlouhy's counsel attempted to ask questions about what was actually said during the conversations, the court sustained a hearsay objection. Dlouhy's counsel made an offer of proof that the witness, if allowed, would testify about the conversations, including that Dlouhy had told

the witness that the dog had come onto the property, had showed aggression, and that Dlouhy had thrown a shovel at it, and that Dlouhy indicated he had called animal control and they failed to take action.

After both parties had rested, the court conducted a jury instruction conference. Dlouhy requested an instruction concerning justification or choice of evils. The court refused to give the requested instruction. The court found that an element of the justification or choice of evils defense is that there must have been a specific and imminent threat and that there was no evidence adduced of such at the time that Dlouhy had acted.

After approximately 40 minutes of deliberation, the jury returned a verdict of guilty. Dlouhy sought a new trial, which the district court denied. This appeal followed.

## III. ASSIGNMENTS OF ERROR

Dlouhy has assigned two errors on appeal. First, he asserts that the district court erred in refusing to instruct the jury on his proffered defense of justification or choice of evils. Second, he asserts that the court erred in sustaining a hearsay objection to the proffered testimony of Smallwood.

## IV. ANALYSIS

### 1. JUSTIFICATION OR CHOICE OF EVILS

Dlouhy first challenges the district court's refusal to instruct the jury in this case on his proffered defense of justification or choice of evils. The choice of evils defense was factually unavailable to Dlouhy based on the record presented to us, and we find no merit to his assertion that the district court erred.

We recently had occasion to discuss the justification or choice of evils defense in *State v. Beal*, 21 Neb. App. 939, 846 N.W.2d 282 (2014). In that case, we recounted the basic principles espoused in Nebraska jurisprudence concerning the defense and concluded that it was, similarly, factually unavailable to the party seeking to use it as an excuse for otherwise violating the law.

The justification or choice of evils defense is codified in Nebraska at Neb. Rev. Stat. § 28-1407 (Reissue 2008). That statute specifies that conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged. See § 28-1407(1)(a). The defense reflects the Nebraska Legislature's policy decision that certain circumstances excuse conduct that would otherwise be criminal. *State v. Cozzens*, 241 Neb. 565, 490 N.W.2d 184 (1992); *State v. Beal, supra*. Therefore, the justification or choice of evils defense operates to legally excuse conduct that would otherwise subject a person to criminal sanctions. *Id.* "'[I]f the harm which will result from compliance with the law is greater than that which will result from violation of it, [a person is] justified in violating it.'" *State v. Cozzens, supra* at 571, 490 N.W.2d at 189, quoting 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 5.4 (1986).

The justification or choice of evils defense requires that a defendant (1) acts to avoid a greater harm; (2) reasonably believes that the particular action is necessary to avoid a specific and immediately imminent harm; and (3) reasonably believes that the selected action is the least

harmful alternative to avoid the harm, actual or reasonably believed by the defendant to be certain to occur. *State v. Cozzens, supra*; *State v. Beal, supra*.

As we discussed in *State v. Beal, supra*, the Nebraska Supreme Court has addressed both legal and factual availability of the justification or choice of evils defense in prior cases. See *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003); *State v. Wells*, 257 Neb. 332, 598 N.W.2d 30 (1999); *State v. Cozzens, supra*; *State v. Graham*, 201 Neb. 659, 271 N.W.2d 456 (1978). For the defense to be factually available to a defendant in a particular case, he or she must factually establish that his or her actions were efforts to prevent a specific and immediate harm to at least one reasonably identifiable person; a generalized belief, even if apparently well founded, that the alleged greater harm might occur and might involve an unidentified person is insufficient to supply a factual basis for application of the defense. *State v. Beal, supra*. See *State v. Cozzens, supra*. For the defense to be legally available to a defendant in a particular case, his or her conduct must be responsive to a legally recognized harm, and that the defense may not be used to justify or excuse criminal activity as an expression of disagreement with decisions by a branch of government. *Id.* As we noted in *State v. Beal, supra*, the Nebraska Supreme Court has consistently chosen to find the defense factually unavailable whenever possible and appropriate, rather than addressing legal availability. See *State v. Mowell, supra*; *State v. Wells, supra*; *State v. Graham, supra*. See, also, *State v. Cozens, supra*.

In *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003), the Nebraska Supreme Court addressed the application of the justification or choice of evils defense in the context of a prosecution for possession of a firearm by a prohibited person. In that case, the defendant was convicted following a jury trial of second degree murder, use of a deadly weapon to commit a felony, and being a felon in possession of a firearm. On appeal, he argued that the justification or choice of evils defense should have been available to him as a defense to the possession of a firearm charge, and he assigned error to the trial court's refusal to give the jury an instruction on the defense.

In addressing the availability of the justification or choice of evils defense in such a case, the Nebraska Supreme Court noted that Nebraska law explicitly and unequivocally prohibits a felon from being in possession of a firearm. *State v. Mowell, supra*. See Neb. Rev. Stat. 28-1206. The Court also recognized that because no exceptions appear on the face of the statute, a felon who possesses a firearm for allegedly self-defense purposes is guilty of violating the statute prohibiting possession of a firearm. *Id.* See, also, *State v. Harrington*, 236 Neb. 500, 461 N.W.2d 752 (1990), *disapproved on other grounds, State v. Woodfork*, 239 Neb. 720, 478 N.W.2d 248 (1991).

In *State v. Mowell, supra*, the Nebraska Supreme Court refused to rule on the legal availability of the defense to the charge of being a prohibited person in possession of a firearm, but concluded that the defense was not factually available to the defendant under the facts of the case. In so ruling, the Court specifically emphasized that it had "repeatedly stated that the action taken must be 'necessary to avoid a specific and immediately imminent harm.'" *State v. Mowell, supra* at 96, 672 N.W.2d at 400. General and nonimmediate fears are inadequate grounds upon which to justify a violation of the law. *Id.* See *State v. Graham, supra*. See, also, *State v. Cozzens, supra*. The Court concluded that the defendant had failed to establish the factual availability of the defense in his case because the evidence demonstrated that he had been in possession of a firearm

over a period of time during which he was not being specifically and immediately threatened, and that he had ample opportunity to explore other viable alternatives to dispel any threats or fears for his safety. *State v. Mowell, supra.*

The present case is factually very similar. In this case, the evidence adduced did not establish any specific or imminent threat which would make the justification or choice of evils defense factually available to Dlouhy. The evidence indicates that Dlouhy's tenants were apparently threatened by a dog, but had retreated to the safety of the house before speaking with Dlouhy and informing him of the threat. Dlouhy then took a firearm and left the house to go to the threat and shot the dog. Dlouhy did not demonstrate that there was a specific and immediate threat which required his action or that there were no other viable alternatives that he could have explored besides violating the law and possessing a firearm.

Moreover, Dlouhy was charged with possession of the firearm over a period of time, spanning prior to the incident until almost one month later. The evidence demonstrated that after Dlouhy shot the dog, he possessed two firearms, placing them in his tenants' vehicle and informing them that he was not supposed to be in possession of firearms and asking them to tell law enforcement that the firearms belonged to them. The evidence demonstrated that the tenants returned the firearms to Dlouhy and that he again possessed them and was in possession of them in a garage that he owned nearly a month after the incident when he accompanied law enforcement and law enforcement seized them.

The very nature of the underlying incident in this case would seem to make the justification or choice of evils defense generally factually unavailable. In order for Dlouhy to take the action he did, he almost necessarily had to be in possession of a firearm prior to actually shooting the dog and after any threat the dog might have posed was dispelled. Absent a factual scenario where some threat presented itself in a situation where a firearm was available to a prohibited person, that person took possession of the firearm only once the threat was specific and immediate, and the person surrendered possession at the moment the threat was resolved, would it seem even hypothetically possible for the defense to be factually available. Such is not the situation presented in this case, where the evidence suggests that Dlouhy apparently was in possession of firearms, was able to retrieve them and use them to shoot the dog after the threat was no longer specific or immediate, and continued to possess them once the dog had already been shot.

We specifically reject Dlouhy's argument on appeal that availability of the justification or choice of evils defense should not depend upon the presence of a specific and immediate threat. The Nebraska Supreme Court has repeatedly and unequivocally indicated that such is a specific requirement for the availability of the defense in the cases cited above. Indeed, that was the crux of the Court's analysis and disposition in the highly similar *State v. Mowell* case.

We find no merit to Dlouhy's assignment of error that the district court erred in refusing to instruct the jury on his proffered defense of justification or choice of evils. Without any comment on whether the defense could be legally available in a case such as this one, we find that the defense was not factually available on facts of this case.

### 2. HEARSAY OBJECTION

Dlouhy also assigns as error the district court's sustaining of a hearsay objection to proffered testimony. As noted above in the Factual Background, Dlouhy's counsel made an offer

of proof concerning the proffered testimony, and it is apparent from that offer of proof that the testimony was being offered to demonstrate that the dog in question had been a menacing animal at some prior point in time, that Dlouhy had attempted to hit it with a shovel on a prior occasion, and that he had called animal control in the past.

Putting aside the merits of Dlouhy's assertions that the testimony was properly admitted to demonstrate his state of mind and was not hearsay, we find no reversible error in the court's sustaining of the objection. In light of our conclusion above that the evidence demonstrated that there was no specific and immediate threat for which justification or choice of evils could be factually available as a defense, the admission of this testimony would not have made the defense available or otherwise impacted the availability of the requested jury instruction. We find Dlouhy's arguments on this assigned error to be without merit.

## V. CONCLUSION

We find no merit to Dlouhy's assertions on appeal. We affirm.

AFFIRMED.