STATE OF NEBRASKA, APPELLEE, V. JO HELEN ROBERTSON, APPELLANT.

394 N.W.2d 635

Filed October 10, 1986.   No. 85-884.

826

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, and Shanahan, JJ.

Shanahan, J.

This is Jo Helen Robertson's second appeal to this court concerning the murder of Laura LaPointe. In *State v. Robertson*, 219 Neb. 782, 366 N.W.2d 429 (1985), we reversed Robertson's previous conviction for the first degree murder of

LaPointe. On retrial a Douglas County jury found Robertson guilty of the first degree murder of LaPointe. Robertson appeals her second conviction. We affirm.

A detailed description of the brutality involved in the murder of LaPointe is found in *State v. Smith,* 219 Neb. 176, 361 N.W.2d 532 (1985), and *State v. Robertson, supra.* Complete restatement of that description is unnecessary for disposition of Robertson's present appeal in which she questions sufficiency of the evidence for her conviction. First, Robertson contends the testimony of a State's witness, Geraldine "Dee" Carr, is "inherently unbelievable" as evidence tending to establish Robertson's participation in the murder. Brief for Appellant at 10. Robertson's second contention is that evidence is insufficient to establish that Robertson was "legally sane" during commission of the LaPointe murder.

Laura LaPointe, a prostitute, was bludgeoned to death in a park north of Omaha on April 11, 1983. Police investigation implicated four Omaha prostitutes—Loray Smith, Carol Joy, Geraldine "Dee" Carr, and Robertson. This court has affirmed the convictions of Smith, see *State v. Smith, supra,* and Joy, see *State v. Joy,* 220 Neb. 535, 371 N.W.2d 113 (1985), for the first degree murder of LaPointe.

The State called Joy and Carr as witnesses during Robertson's retrial. In the first trial, Joy, as a State's witness, testified she and Robertson had taken turns beating LaPointe with a softball bat and that, when Joy had determined that LaPointe was dead, Smith, Carr, Joy, and Robertson returned to Omaha, leaving the LaPointe corpse in the park. See *State v. Robertson, supra.* However, at Robertson's second trial, Joy testified that Robertson was not a member of the group in the park at the time of the LaPointe murder and that Joy alone was responsible for the homicide. For impeachment in response to Joy's recantation of her testimony given at Robertson's first trial, the State introduced salient parts of Joy's testimony from Robertson's previous trial. The State also called Geraldine "Dee" Carr as a witness, who testified about Robertson's participation in events immediately preceding LaPointe's death, including Robertson's beating LaPointe with a 5-foot tree branch or club. The State adduced a pathologist's opinion

that a blunt instrument such as a tree branch was capable of inflicting the wounds and injuries sustained by LaPointe and causing her death. In addition to testimony from its witnesses, the State introduced a tape-recorded interview of Robertson in which she informed police regarding some details in the events preceding the LaPointe murder, although Robertson maintained she was never in the park at the time of the homicide. (Admissibility of Robertson's statement was approved in *State v. Robertson, supra*, and is not an issue in the present appeal.) Although Robertson did not testify, she offered medical testimony about her mental condition on April 11, 1983, which will be discussed later in conjunction with Robertson's second assignment of error.

In determining whether evidence is sufficient to sustain a conviction in a jury trial, [the Supreme Court] does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented to a jury—all of which is within a jury's province for disposition. A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict.

*State v. Schott*, 222 Neb. 456, 462, 384 N.W.2d 620, 624-25 (1986).

Robertson alludes to discredit of Carr's testimony as a matter of law and presents an aspect of Neb. Evid. R. 607: "The credibility of a witness may be attacked by any party, including the party calling him." Neb. Rev. Stat. § 27-607 (Reissue 1985). Where it is clear that a party as a witness, to meet the exigencies in pending litigation and without reasonable explanation, changes such witness' testimony and then testifies to facts materially different concerning a vital issue, the subsequent and altered testimony from such witness is discredited as a matter of law and should be disregarded. See, *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981); *Clark v. Smith*, 181 Neb. 461, 149 N.W.2d 425 (1967); *Sacca v. Marshall*, 180 Neb. 855, 146 N.W.2d 375 (1966); *Kirchner v. Gast*, 169 Neb. 404, 100 N.W.2d 65 (1959). Otherwise, an inconsistent or contradictory statement by a witness, who is not a party opponent, is a factor which may affect a jury's

evaluation of a witness' credibility or weight to be given such witness' testimony. *Insurance Co. of North America v. Omaha Paper Stock, Inc.*, 189 Neb. 232, 202 N.W.2d 188 (1972); *Clark v. Smith, supra; Sacca v. Marshall, supra.* Yet, Robertson fails to point out any change in Carr's testimony constituting a material difference as the result of testimony given at Robertson's first trial or during the course of the second trial. We find neither an ostensible attack on Carr's credibility nor her impeachment in the record presented. Moreover, Carr is not a party opposing Robertson in the litigation—a criminal charge prosecuted by the State against Robertson. Absent such change in testimony by a party litigant, Carr's credibility and the weight of her testimony establishing that Robertson actively participated in the LaPointe murder were matters for evaluation and determination by the jury, not by this court. See *State v. Schott, supra.*

On the issue of Robertson's sanity at the time of the LaPointe murder, Dr. Bruce Gutnik, a psychiatrist, testified on behalf of Robertson. As testified by Dr. Gutnik, referring to Robertson's mental status at the time of the murder: "I couldn't tell you what her mental status was." Dr. Gutnik then acknowledged he could not state whether Robertson was sane or insane on April 10 or 11, 1983. Also, on behalf of Robertson, a second psychiatrist, Dr. George Hachiya, testified he was unable to "state what [Robertson's] mental condition was when she is alleged to have committed the murder of Laura LaPointe in April of 1983." On the other hand, Dr. David Kentsmith, a psychiatrist testifying for the State, expressed his opinion that Robertson did have the capacity to understand right from wrong and to know the nature and consequences of her acts at the time of the LaPointe murder.

In Nebraska the test for insanity as a defense in a criminal case is whether an accused had the capacity to understand the nature of the act committed and whether the accused was able to distinguish right from wrong with respect to the act committed. See *Thompson v. State*, 159 Neb. 685, 68 N.W.2d 267 (1955). As a defense to a charge against an accused, insanity must be shown to exist at the time of the offense charged. See *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983). "The

verdict of the finder of fact on the issue of insanity will not be disturbed unless there is insufficient evidence to support the findings." *State v. Klatt*, 187 Neb. 274, 281, 188 N.W.2d 821, 826 (1971).

Giving Robertson the optimum benefit of the evidence from the psychiatrists, the evidence in the case before us involves questions of fact for the jury concerning Robertson's capacity to understand the nature of her acts and to distinguish right from wrong concerning her acts in causing the LaPointe murder.

On a claim of insufficiency of evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. See *State v. Joy*, 220 Neb. 535, 371 N.W.2d 113 (1985).

We conclude that there is sufficient evidence to sustain the jury's verdict of conviction in Robertson's case.

AFFIRMED.

GRANT, J., participating on briefs.