relevant evidence. The referee erred in excluding evidence of expenses, and the district court abused its discretion to the extent it adopted the referee's findings.

## V. CONCLUSION

We conclude that the referee who conducted the hearing in this case erred in granting Vanessa's motion for directed verdict, because there was clearly sufficient evidence adduced to prevent judgment as a matter of law. We also conclude that the referee erred in excluding clearly relevant evidence. As such, the district court abused its discretion in adopting the referee's recommendations and dismissing Benjamin's application for modification on the basis of a motion for directed verdict. We reverse, and remand for further proceedings.

Reversed and remanded for
further proceedings.

---

State of Nebraska, appellee, v.
Roger L. Dalland, appellant.
___ N.W.2d ___

Filed June 25, 2013.    No. A-12-615.

1.  **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings of fact for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that it reviews independently of the trial court's determination.
2.  **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures.
3.  **Motor Vehicles: Warrantless Searches: Probable Cause.** A warrantless search of a vehicle is permissible upon probable cause that the automobile contains contraband.
4.  **Police Officers and Sheriffs: Probable Cause.** A law enforcement officer has probable cause to search when it is objectively reasonable.
5.  **Search and Seizure.** A search is objectively reasonable when known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that he will find contraband or evidence of a crime.

6. **Probable Cause.** Probable cause depends on the totality of the circumstances.
7. **Police Officers and Sheriffs: Probable Cause.** If contraband is seen or smelled, the officer is not required to close his eyes or nostrils, walk away, and leave the contraband where he sees or smells it.
8. **Police Officers and Sheriffs: Motor Vehicles: Warrantless Searches: Probable Cause.** While an officer need not walk away from contraband where he sees or smells it, the scope of a warrantless search of an automobile is limited to the places where there is probable cause to believe particular contraband might be found.
9. **Constitutional Law: Police Officers and Sheriffs: Search and Seizure: Probable Cause.** The Fourth Amendment's requirement that an officer have probable cause before conducting a warrantless search does not allow police officers to make guesses about where evidence might be located.
10. **Double Jeopardy: Evidence: New Trial: Appeal and Error.** The Double Jeopardy Clause does not forbid a retrial so long as the sum of all the evidence admitted by a trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict.

Appeal from the District Court for Hamilton County: MICHAEL J. OWENS, Judge. Reversed and remanded for a new trial.

Michael P. Kneale, of Bradley, Elsbernd, Andersen, Kneale & Mues Jankovitz, P.C., for appellant.

Jon Bruning, Attorney General, and Nathan A. Liss for appellee.

SIEVERS, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

This appeal raises one primary issue: Does the odor of marijuana emanating from a person inside a building give a police officer probable cause to search that person's vehicle once he enters it? We find it does not. Accordingly, we reverse Roger L. Dalland's conviction for possession of methamphetamine and remand the cause for a new trial.

## BACKGROUND

In May 2011, Dalland received a call from Deputy Aaron Smith asking him to come to the law enforcement center in Aurora, Nebraska, for an interview to discuss "irrigation pipe thefts." While Dalland was at the law enforcement center,

Cpl. Chad Mertz walked by Dalland and "immediately could smell an overwhelming odor of burnt marijuana." By the time Mertz was ready to make contact with him, however, Dalland had left the law enforcement center and was seated outside in his vehicle. Mertz approached the vehicle, and upon request, Dalland got out and Mertz performed a pat-down search. Finding nothing, Mertz then searched Dalland's vehicle. While searching the vehicle, Mertz found needles that contained trace amounts of methamphetamine.

A complaint filed in the Hamilton County Court alleged that Dalland had possessed a controlled substance. He was bound over to district court, and an indictment charging him with possession of a controlled substance was filed. In the course of the proceedings, Dalland filed a motion to suppress to exclude any evidence seized when Mertz searched his vehicle. In his motion, Dalland argued that Mertz violated his constitutional rights by illegally searching his vehicle.

At the hearing on the motion to suppress, the following testimony was adduced:

Dalland was with his girlfriend, Jennifer Dahl, in Grand Island, Nebraska, when he received a telephone call from Smith requesting him to come in for an interview. After receiving the call, Dalland drove Dahl and himself to Aurora in his vehicle. He parked in the public stalls outside the law enforcement center and entered the building.

Smith interviewed Dalland and Dahl separately. He interviewed Dalland first, for a little over an hour. While Smith interviewed Dahl, Dalland sat in the lobby, occasionally retreating to his vehicle to smoke a cigarette.

During one of the time periods when Dalland was seated in the lobby, Mertz walked past him. Mertz noticed the odor of "burnt marijuana" emanating from the location where Dalland was sitting. There was nobody else in the lobby at the time.

After noting the odor, Mertz sought out Smith to determine whether he still needed Dalland for his investigation. Learning that Dalland's interview was finished, Mertz intended to make contact with Dalland, but by this time, Dalland had left the law enforcement center and was sitting in his vehicle with

the window rolled down. Mertz followed Dahl out of the law enforcement center and toward the vehicle.

As Dahl got in the passenger side of the vehicle, Mertz approached Dalland from the driver's side, informed him that he could smell marijuana, and asked him if he had smoked any. Dalland denied smoking marijuana, but advised he had been around people who had. Mertz then asked Dalland to exit the vehicle and informed him he was going to search him. About this time, Dahl exited the vehicle and Mertz directed her to sit on the sidewalk. She sat down about 7 feet away.

After performing the pat-down search, Mertz searched Dalland's vehicle and found needles. He asked Dalland if the needles in the vehicle were used for methamphetamine, and Dalland said they were. The needles were then sent to the Nebraska State Patrol crime laboratory, where trace amounts of methamphetamine were found.

The parties disputed the events directly preceding Mertz' search of Dalland's vehicle. In his affidavit of probable cause for a warrantless arrest, Mertz reported in part:

> Mertz made contact with Dalland. Dalland stated that he did not smoke marijuana but he was with people who were smoking it earlier . . . . Mertz asked Dalland if he had anything in his vehicle or on his person. Dalland stated no. Mertz searched Dalland and the vehicle he was sitting in. Mertz located a bag of syringes which were hidden inside of a glove.

At the hearing on the motion to suppress, Mertz testified that Dalland told him there were needles in his vehicle *before* Mertz searched it. He said that he informed Dalland he was going to search him and asked him if there was anything located on his person or in his vehicle that could "stick" or "poke" him. According to Mertz, Dalland volunteered that he had needles in his vehicle that were used for methamphet-amine. Mertz explained that he searched the vehicle *after* Dalland made these statements. On cross-examination, defense counsel impeached Mertz with his prior inconsistent affida-vit. Neither defense counsel nor the State on redirect asked Mertz to explain the inconsistency between his testimony and affidavit.

Dahl testified, however, that *after* Mertz began searching the vehicle, he asked Dalland if he was going to find any drugs or paraphernalia in the vehicle and Dalland said there were needles inside. Dalland testified that he initially denied there were drugs or paraphernalia in the vehicle, but that *after* Mertz began searching, he informed Mertz of needles behind the seat.

On cross-examination, Mertz admitted that he did not have a search warrant or permission to search. He also stated that nothing was in plain view and that it was not a traffic stop, a search pursuant to an emergency situation, an inventory search, or a search pursuant to an arrest.

The trial court denied Dalland's motion to suppress. In its order, the court stated that the legal issue before it was whether or not an officer has probable cause to search a motor vehicle after detecting the odor of marijuana emanating from a person occupying the vehicle. Relying on *State v. Watts*, 209 Neb. 371, 307 N.W.2d 816 (1981), the trial court determined that Mertz' detection of the odor of marijuana provided him with probable cause to search Dalland's vehicle. The trial court did not rely on Dalland's statement that there were needles in the vehicle as a basis for its finding of probable cause, but it did mention the statement as part of its factual introduction. The court wrote that after Mertz advised Dalland that he intended to search the vehicle, "[Dalland] indicated to Mertz that there might be used needles in the vehicle . . . . Mertz then conducted a search and found controlled substances in the vehicle."

At trial, the parties introduced exhibits 1 through 8. Exhibit 1 contains the stipulated testimony that individual witnesses would offer. The stipulated testimony includes the testimony from the hearing on the motion to suppress and testimony from a forensic scientist of the Nebraska State Patrol crime laboratory identifying the substance found on the needles in Dalland's vehicle as methamphetamine. Exhibit D of exhibit 1 is a report from the crime laboratory stating that the syringes that were tested contained methamphetamine. Exhibit 2 is a stipulation to chain of custody, and exhibits 3 through 8 are physical evidence.

Defense counsel objected to the exhibits on the grounds outlined in his motion to suppress, and the trial court took the matter under advisement before admitting the exhibits.

The trial court found Dalland guilty of possession of a controlled substance, a Class IV felony, and sentenced him to serve 270 days in the Hamilton County jail.

This timely appeal followed.

## ASSIGNMENT OF ERROR

On appeal, Dalland argues that the trial court erred by receiving evidence that was illegally seized by law enforcement in violation of his rights guaranteed by the U.S. and Nebraska Constitutions.

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings of fact for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that it reviews independently of the trial court's determination. *State v. Garcia*, 281 Neb. 1, 792 N.W.2d 882 (2011).

## ANALYSIS

Dalland argues that the trial court erred in admitting into evidence the needles that Mertz seized from his vehicle, because they were seized in violation of his Fourth Amendment rights. The State argues that Mertz' search was an exception to the Fourth Amendment protection against unreasonable searches and seizures, because Mertz had probable cause based on smelling the odor of marijuana and Dalland's admission that he had needles used for methamphetamine in his vehicle. The State concedes in its brief that the district court found that the odor of marijuana alone provided probable cause for the search, without reliance upon Dalland's alleged admission that there were needles in the vehicle.

[2,3] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals

against unreasonable searches and seizures. *State v. Smith*, 279 Neb. 918, 782 N.W.2d 913 (2010). A warrantless search of a vehicle is permissible upon probable cause that the automobile contains contraband. See *California v. Carney*, 471 U.S. 386, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985). See, also, *State v. Alarcon-Chavez*, 284 Neb. 322, 821 N.W.2d 359 (2012).

[4-6] A law enforcement officer has probable cause to search when it is objectively reasonable. See *State v. Craven*, 253 Neb. 601, 571 N.W.2d 612 (1997). A search is objectively reasonable when known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that he will find contraband or evidence of a crime. See *id*. Probable cause depends on the totality of the circumstances. See *State v. Voichahoske*, 271 Neb. 64, 709 N.W.2d 659 (2006).

In this case, Dalland concedes that Mertz' initial pat-down search was permissible, but he argues that Mertz did not have probable cause to expand the search to encompass Dalland's vehicle. Therefore, we limit our analysis to whether Mertz had probable cause to search Dalland's vehicle.

[7] The trial court reasoned that the odor of marijuana provided Mertz with sufficient probable cause to search Dalland's vehicle, relying upon *State v. Watts*, 209 Neb. 371, 307 N.W.2d 816 (1981). In *Watts*, the Nebraska Supreme Court stated: "We have constantly held that the smell of marijuana, standing alone, is sufficient to furnish probable cause for the warrantless search of a motor vehicle where, as here, there was sufficient foundation as to the expertise of the officer." 209 Neb. at 374, 307 N.W.2d at 819. However, *Watts* and the cases upon which it relies involved traffic stops and situations in which the officer smelled the marijuana emanating from the vehicle. See, e.g., *State v. Daly*, 202 Neb. 217, 218-19, 274 N.W.2d 557, 558 (1979) (stating that "[w]hen the rear door of the pickup was opened, [the officer] could smell a strong odor of marijuana"); *State v. Wood*, 195 Neb. 353, 356, 238 N.W.2d 226, 228 (1976) (stating that "after being invited to inspect the camper, the officer detected a strong odor of marijuana"). The court in *State v. Ruzick*, 202 Neb. 257, 258, 274 N.W.2d 873, 875 (1979), recognized this limitation when it stated: "In

a number of cases we have held that the odor of marijuana coming from a vehicle is sufficient to furnish probable cause for a search of the vehicle." And in *State v. Romonto*, 190 Neb. 825, 830, 212 N.W.2d 641, 644 (1973), the court explained why a warrantless search of a vehicle is permissible when it said: "An officer is entitled to rely on his senses in determining whether contraband is present in a vehicle. If contraband is seen or smelled, the officer is not required to close his eyes or nostrils, walk away, and leave the contraband where he sees or smells it."

[8] While an officer need not walk away from contraband where he sees or smells it, the scope of a warrantless search of an automobile is limited to the places where there is probable cause to believe particular contraband might be found. See *U.S. v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1983). In *U.S. v. Ross*, 456 U.S. at 824, the U.S. Supreme Court went to great lengths to illustrate that different factual scenarios give rise to probable cause to search different areas, explaining:

> Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.

The factual scenario in the case at bar differs substantially from the line of cases involving an officer's search of a vehicle pursuant to a traffic stop. While *State v. Watts*, 209 Neb. 371, 307 N.W.2d 816 (1981), involved a scenario where a police officer smelled the odor of marijuana emanating from the defendant's vehicle, in this case, Mertz smelled the odor of marijuana emanating from Dalland's person while Dalland was in a location separate from that of his vehicle. In *State v. Watts, supra*, the police officer could have reasonably believed that he would find evidence of criminal activity in the defendant's vehicle, because he smelled the odor of an illegal substance emanating from the interior of the vehicle.

In this case, however, there was no reason for Mertz to believe that evidence of criminal activity would be located in Dalland's vehicle as opposed to any other location. In order to have probable cause to search the vehicle, Mertz needed objective information indicating a fair probability that contraband or evidence of crime would be found. See *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996). Accordingly, we must examine the facts from the perspective of Mertz at the time he made the search. The record indicates that Mertz entered the law enforcement center and observed the odor of marijuana emanating from Dalland's person. Mertz then consulted Smith to determine that he had completed his interview with Dalland. At this point, Dalland had been sitting in the law enforcement center for at least an hour. Mertz knew that Dalland had been interviewed and also observed Dahl leave her interview. Based on the odor emanating from Dalland's person, Mertz searched him and found no evidence of criminal activity. Dalland repeatedly denied having smoked any marijuana. At this point, Mertz then expanded his search to encompass Dalland's vehicle.

In the line of cases involving traffic stops, the arresting officer approaches individuals seated in a vehicle. Smelling marijuana, the officer reasonably suspects that he might find evidence of criminal activity in the vehicle, which is the area from which the marijuana odor emanated. The officer then has probable cause to search the area from which the odor is emanating because an odor indicates a probability that one might find evidence of criminal activity in the location of the odor.

[9] In the case at bar, Mertz searched Dalland's person, which was the location from which the odor emanated. After finding no evidence of criminal activity, he then proceeded to search a second location, Dalland's vehicle. He did not state that the vehicle emanated an odor of marijuana, but, rather, that the odor emanated from Dalland himself. These facts did not provide Mertz probable cause to search Dalland's vehicle. Although Dalland's odor may have reasonably led Mertz to believe that Dalland was around marijuana at some point during the day, the record indicates no reason to suspect

evidence of marijuana would be located in Dalland's vehicle. Given that the odor remained on Dalland the entire time he was at the law enforcement center, we can ascertain that the odor lingered on his person for a substantial period of time. Mertz, as a "certified drug recognition expert," would likely have knowledge of marijuana's lingering odor. The lasting nature of Dalland's odor, combined with the lack of evidence in Dalland's immediate vicinity, raised the question of where Dalland encountered marijuana and acquired the odor. While Dalland may have encountered it in his vehicle, he may have encountered it any number of ways and in any number of locations throughout the day. The Fourth Amendment's requirement that an officer have probable cause before conducting a warrantless search does not allow police officers to make guesses about where evidence might be located. See *State v. Konfrst*, 251 Neb. 214, 556 N.W.2d 250 (1996). To the contrary, it requires that the facts indicate a fair probability that the officer will find contraband in the particular location he seeks to search. See *id*. In this case, Dalland's odor did not give rise to a fair probability that contraband would be found in Dalland's vehicle.

The State argues, however, that Mertz had additional justification to search Dalland's vehicle because Dalland stated that needles were located within it before the search occurred. Although the trial court did note that Dalland made this statement before Mertz searched his vehicle, the only evidence supporting this finding of fact was Mertz' trial testimony. Both Dalland and Dahl contradicted Mertz' testimony, but more important, Mertz' testimony conflicted with his prior affidavit of probable cause. In his affidavit of probable cause, Mertz said that he asked Dalland if he would find anything in the vehicle and that Dalland said he would not. Mertz did not provide an explanation for the difference between his testimony at trial and the previous statement in his sworn affidavit.

The record before our court indicates that Mertz changed his testimony to meet the exigencies of trial without a reasonable explanation. Accordingly, we must disregard his inconsistent trial testimony as a matter of law and assume that Dalland did not state needles were present in his vehicle prior

to Mertz' initiating the search of the vehicle. See, *State v. Robertson*, 223 Neb. 825, 394 N.W.2d 635 (1986); *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981). See, also, *Clark v. Smith*, 181 Neb. 461, 149 N.W.2d 425 (1967); *Sacca v. Marshall*, 180 Neb. 855, 146 N.W.2d 375 (1966); *Kirchner v. Gast*, 169 Neb. 404, 100 N.W.2d 65 (1959).

Because we find that the trial court improperly admitted evidence that was seized in violation of Dalland's rights, we reverse the decision of the trial court and remand the cause for proceedings consistent with this opinion.

[10] Having determined that Mertz did not have probable cause to search the vehicle, we find that the court erred in denying the motion to suppress. This error is reversible error; therefore, we must determine whether the totality of the evidence admitted by the district court was sufficient to sustain Dalland's conviction. If it was not, then the concepts of double jeopardy would not allow a remand for a new trial. See *State v. Borst*, 281 Neb. 217, 795 N.W.2d 262 (2011). The Double Jeopardy Clause does not forbid a retrial so long as the sum of all the evidence admitted by a trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict. *State v. Borst, supra*.

The evidence presented, including the needles seized and the subsequent test results thereon, was sufficient to sustain a conviction for possession of methamphetamine. The cause should therefore be remanded for a new trial.

## CONCLUSION

Mertz' detection of the odor of marijuana emanating from Dalland while he was seated inside the law enforcement center did not give rise to probable cause to search Dalland's vehicle. The evidence seized from the vehicle was therefore seized in violation of Dalland's Fourth Amendment rights. Because we find that the trial court improperly admitted evidence seized in violation of Dalland's Fourth Amendment rights, and the evidence was otherwise sufficient to sustain his conviction, we reverse the conviction and remand the cause for a new trial.

Reversed and remanded for a new trial.