in ruling on a plea in abatement is cured by a subsequent finding at trial of guilt beyond a reasonable doubt which is supported by sufficient evidence.[46]

Green's fifth assignment of error is without merit.

## VI. CONCLUSION

The decision of the district court is affirmed.

AFFIRMED.

---

[46] *State v. McGee*, 282 Neb. 387, 803 N.W.2d 497 (2011).

---

State of Nebraska, appellee, v.
Roger L. Dalland, appellant.
___ N.W.2d ___

Filed January 24, 2014.    No. S-12-615.

1.  **Trial: Investigative Stops: Warrantless Searches: Appeal and Error.** The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge.

2.  **Trial: Witnesses: Evidence.** Where a party without reasonable explanation testifies to facts materially different concerning a vital issue, the change clearly being made to meet the exigencies of pending litigation, such evidence is discredited as a matter of law and should be disregarded. In applying this rule, the important considerations are that the testimony pertains to a vital point, that it is clearly apparent the party has made the change to meet the exigencies of the pending case, and that there is no rational or sufficient explanation for the change in testimony.

3.  **Witnesses: Testimony.** Where it is clear that a party as a witness, to meet the exigencies in pending litigation and without reasonable explanation, changes such witness' testimony and then testifies to facts materially different concerning a vital issue, the subsequent and altered testimony from such witness is discredited as a matter of law and should be disregarded.

4.  **Witnesses: Testimony: Juries.** An inconsistent or contradictory statement by a witness, who is not a party opponent, is a factor which may affect a jury's evaluation of a witness' credibility or weight to be given such witness' testimony.

5.  **Trial: Parties: Witnesses: Testimony.** Testimony altered for trial to meet the exigencies of the pending litigation should be disregarded as a matter of law only if the witness giving the testimony is a party to the action.

6.  **Judgments: Appeal and Error.** A correct result will not be set aside merely because the lower court applied the wrong reasoning in reaching that result.

7. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures.

8. **Search and Seizure: Motor Vehicles: Probable Cause.** A warrantless search of a vehicle is permissible upon probable cause that the vehicle contains contraband.

9. **Probable Cause: Words and Phrases.** Probable cause is a flexible, common-sense standard that depends on the totality of the circumstances.

10. **Probable Cause.** Probable cause to search requires that the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found.

11. **Trial: Evidence: Appeal and Error.** In reviewing findings of fact, an appellate court does not reweigh or resolve conflicts in the evidence, but will uphold the trial court's findings of fact unless those findings are clearly erroneous.

12. **Evidence: Appeal and Error.** An appellate court resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.

Petition for further review from the Court of Appeals, Sievers, Pirtle, and Riedmann, Judges, on appeal thereto from the District Court for Hamilton County, Michael J. Owens, Judge. Judgment of Court of Appeals reversed, and cause remanded with direction.

Michael P. Kneale, of Bradley, Elsbernd, Andersen, Kneale & Mues Jankovitz, P.C., for appellant.

Jon Bruning, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Wright, J.

## NATURE OF CASE

Roger L. Dalland was convicted of possession of a controlled substance after syringes with trace amounts of methamphetamine were discovered during a warrantless search of his vehicle. At a hearing on Dalland's motion to suppress, the State argued that it had probable cause to conduct the search based on the odor of marijuana emanating from Dalland's person or, if that was not sufficient, on an officer's alleged knowledge that there were needles in Dalland's vehicle. The district court found that the odor of marijuana emanating from

Dalland's person established probable cause to search his vehicle. It overruled Dalland's motion to suppress and subsequently convicted Dalland based on the evidence discovered in the search of his vehicle.

On appeal, the Nebraska Court of Appeals reversed, and remanded for a new trial. See *State v. Dalland*, 20 Neb. App. 905, 835 N.W.2d 95 (2013). It concluded that standing alone, the odor of marijuana emanating from Dalland's person did not provide probable cause to search his vehicle, and that the State's additional justification for the search—knowledge of needles used for methamphetamine—was based solely on testimony that should be disregarded as a matter of law. Ultimately, the Court of Appeals concluded that there was no probable cause to search the vehicle. We granted the State's petition for further review and now reverse the decision of the Court of Appeals.

## SCOPE OF REVIEW

[1] The ultimate determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search are reviewed de novo, and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *In re Interest of Ashley W.*, 284 Neb. 424, 821 N.W.2d 706 (2012).

## FACTS

On May 24, 2011, Dalland and his girlfriend, Jennifer Dahl, were interviewed at the law enforcement center in Aurora, Nebraska, about an unrelated matter. As Cpl. Chad Mertz of the Aurora Police Department walked past Dalland in the law enforcement center, Mertz smelled the odor of burnt marijuana coming from where Dalland was sitting. After Dalland finished his interview, he waited for Dahl in the lobby of the law enforcement center and then in his vehicle in the parking lot. He was sitting in the driver's seat of his vehicle in the parking lot when he was confronted by Mertz about the odor. Mertz asked Dalland to exit the vehicle, performed a pat-down search of Dalland's person, and then searched the vehicle. The searches were performed without consent or a warrant.

In the vehicle, Mertz found needles containing trace amounts of methamphetamine. Dalland was subsequently arrested and charged with possession of a controlled substance. Before trial, Dalland moved to suppress the evidence seized in the search of his vehicle.

At the suppression hearing, the parties introduced contradicting evidence about the specifics of the search. Dalland testified that Mertz began searching the vehicle without any knowledge that the vehicle contained drugs, weapons, or drug paraphernalia. According to Dalland, when Mertz asked about the contents of the vehicle prior to the search of the vehicle, Dalland denied that it contained any drugs or weapons. He stated that he did not tell Mertz that there were needles in the vehicle until Mertz had already started the search. Dahl similarly testified that Mertz did not learn about the needles until the search was already in progress. In contrast, Mertz testified that he asked about the needles in the vehicle before searching it. He explicitly denied learning about the needles after he started searching the vehicle.

On cross-examination, Dalland confronted Mertz about a police report that Mertz had filed in the case. Dalland quoted from Mertz' report that stated Dalland had denied having any drugs or drug paraphernalia in the vehicle. When confronted about his report, Mertz reiterated that he learned about the needles in the vehicle before starting the search. He stated that he did not enter the vehicle to search it until after Dalland said there were needles in the vehicle that had been used for methamphetamine. Dalland neither asked Mertz to explain the inconsistencies between his trial testimony and the report nor proffered the report into evidence.

The district court overruled Dalland's motion to suppress. It found that the odor of marijuana was sufficient to establish probable cause for the search of Dalland's vehicle, citing *State v. Watts*, 209 Neb. 371, 307 N.W.2d 816 (1981), and *State v. Reha*, 12 Neb. App. 767, 686 N.W.2d 80 (2004). The court found that Mertz did not search the vehicle until after Dalland informed him that there were needles in the vehicle. However, the court did not rely upon this fact in finding that Mertz had probable cause to search the vehicle.

At a bench trial, the test results establishing that the needles from Dalland's vehicle contained methamphetamine were admitted over Dalland's objection. Dalland was found guilty of possession of a controlled substance and sentenced to 270 days' incarceration.

Dalland timely appealed, alleging the district court erred by overruling his motion to suppress and by receiving the evidence that was the subject of the motion to suppress. He did not challenge the court's decision that the search of his person was constitutional. He admitted that Mertz was justified in approaching Dalland about the odor of marijuana on his person, but argued that Mertz violated Dalland's Fourth Amendment rights when Mertz "extend[ed] the search to include Dalland's vehicle." See brief for appellant at 7.

The issue was whether there was probable cause to search Dalland's vehicle. The Court of Appeals concluded that the district court erred in finding probable cause for the search of Dalland's vehicle based solely upon the odor of marijuana emanating from his person. See *State v. Dalland*, 20 Neb. App. 905, 835 N.W.2d 95 (2013). It distinguished *Watts, supra*, and all of the cases upon which *Watts* relied, because they "involved traffic stops and situations in which the officer smelled the marijuana emanating from the vehicle." *Dalland*, 20 Neb. App. at 911, 835 N.W.2d at 100. The Court of Appeals explained:

> Given that the odor remained on Dalland the entire time he was at the law enforcement center, we can ascertain that the odor lingered on his person for a substantial period of time. . . . The lasting nature of Dalland's odor, combined with the lack of evidence in Dalland's immediate vicinity, raised the question of where Dalland encountered marijuana and acquired the odor. While Dalland may have encountered it in his vehicle, he may have encountered it any number of ways and in any number of locations throughout the day.

*Id*. at 914, 835 N.W.2d at 102. Accordingly, the Court of Appeals held that the district court erred in concluding that the odor of marijuana on Dalland's person alone was probable cause to search his vehicle.

On appeal, the State argued that there was probable cause to search Dalland's vehicle if the odor of marijuana on Dalland's person was considered in conjunction with Mertz' testimony that prior to the search, he learned the vehicle contained needles used for methamphetamine. Mertz' testimony was the only evidence to support the State's assertion that Mertz knew about the needles before the search. But the Court of Appeals concluded that Mertz' testimony should be disregarded as a matter of law because it found that Mertz, without a reasonable explanation, had changed his testimony from that given in a probable cause affidavit in order to meet the exigencies of trial. Without this testimony, the evidence showed that Mertz did not learn about the needles until after starting the search and that the only basis for the search was the odor of marijuana on Dalland's person, which the Court of Appeals concluded was not sufficient to establish probable cause. In the absence of probable cause, the needles were improperly admitted as the fruit of an illegal search. Therefore, the Court of Appeals reversed the judgment of the district court and remanded the cause for a new trial. We subsequently granted the State's petition for further review.

## ASSIGNMENTS OF ERROR

On further review, the State assigns, restated, that the Court of Appeals erred (1) by relying on Mertz' probable cause affidavit to discredit his trial testimony even though the affidavit was not in evidence or discussed at the suppression hearing; (2) by concluding that Mertz was a "party," such that the Court of Appeals could disregard his trial testimony about the needles as a matter of law; and (3) by holding that the smell of marijuana alone did not provide probable cause to search the vehicle. The central question to which all three of the State's assignments of error point is whether there was probable cause for the search of Dalland's vehicle.

## ANALYSIS

Because the Court of Appeals concluded as a matter of law that Mertz' testimony regarding Dalland's statements about the needles in the vehicle should be disregarded, we examine

whether the Court of Appeals erred in disregarding this testimony or in determining, based on the remaining evidence, that there was no probable cause.

## SUMMARY OF ARGUMENTS

The State claims that Mertz had probable cause to conduct the warrantless search of Dalland's vehicle based upon the odor of marijuana on Dalland's person and Dalland's statement to Mertz before the search that there were needles in the vehicle.

Dalland claims that Mertz began the search before Mertz learned there were needles in the vehicle and that the odor of marijuana on Dalland's person did not provide probable cause to search his vehicle.

The district court found that Mertz began the search after he was told about the needles, but it did not rely upon this fact in overruling Dalland's motion to suppress. It concluded that the odor of marijuana was sufficient to establish probable cause for the warrantless search.

The Court of Appeals reversed the judgment of the district court, holding that (1) the odor of marijuana emanating from Dalland's person was not probable cause to search the vehicle and (2) Mertz' trial testimony about searching the vehicle only after Dalland stated there were needles inside must be disregarded as a matter of law.

## DISREGARDING MERTZ' TESTIMONY

Throughout this case, the State has argued that there was probable cause to search Dalland's vehicle because in addition to detecting the smell of marijuana, Mertz learned before he initiated a search of the vehicle that it contained needles used for methamphetamine. Mertz testified that before he began the search, Dalland said that there were needles in the vehicle. The State alleges the Court of Appeals erred by concluding that Mertz changed his testimony for the exigencies of trial and was a "party," such that his inconsistent trial testimony about the needles should be disregarded as a matter of law. We conclude that the Court of Appeals erred in disregarding Mertz' trial testimony.

[2] A court may disregard witness testimony, as a matter of law, under certain circumstances: "Where a party without reasonable explanation testifies to facts materially different concerning a vital issue, the change clearly being made to meet the exigencies of pending litigation, such evidence is discredited as a matter of law and should be disregarded." *Riggs v. Nickel*, 281 Neb. 249, 253, 796 N.W.2d 181, 185 (2011). In applying this rule, the important considerations are that the testimony pertains to a vital point, that it is clearly apparent the party has made the change to meet the exigencies of the pending case, and that there is no rational or sufficient explanation for the change in testimony. *Id.*

In prior cases, we have stated that under this proposition, only the inconsistent testimony of a party as a witness is subject to this rule. See, e.g., *Ketteler v. Daniel*, 251 Neb. 287, 556 N.W.2d 623 (1996); *State v. Osborn*, 241 Neb. 424, 490 N.W.2d 160 (1992); *State v. Robertson*, 223 Neb. 825, 394 N.W.2d 635 (1986); *Insurance Co. of North America v. Omaha Paper Stock, Inc.*, 189 Neb. 232, 202 N.W.2d 188 (1972); *Clark v. Smith*, 181 Neb. 461, 149 N.W.2d 425 (1967); *Sacca v. Marshall*, 180 Neb. 855, 146 N.W.2d 375 (1966). But we have refused to extend the rule to nonparty witnesses. See *Ketteler, supra*.

As it is used in this proposition, the term "party" refers only to those who are named in an action. In *Sacca, supra*, we applied the rule only to plaintiffs. But in *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981), we noted that application of this rule is not limited to plaintiffs but applies to any party. In more recent cases, we have held that the rule applies only to "a party opponent." See *Osborn*, 241 Neb. at 431, 490 N.W.2d at 166. Accord *Robertson, supra*. A witness of the State is not a party subject to this rule. See, *Osborn, supra*; *Robertson, supra*.

[3-5] The inconsistent testimony of a witness who is a party to the action is treated differently from a nonparty witness.

> Where it is clear that a party as a witness, to meet the exigencies in pending litigation and without reasonable explanation, changes such witness' testimony and then testifies to facts materially different concerning a vital

issue, the subsequent and altered testimony from such witness is discredited as a matter of law and should be disregarded. . . . Otherwise, an inconsistent or contradictory statement by a witness, who is not a party opponent, is a factor which may affect a jury's evaluation of a witness' credibility or weight to be given such witness' testimony.

*Robertson*, 223 Neb. at 828-29, 394 N.W.2d at 637 (citations omitted). In other words, testimony altered for trial to meet the exigencies of the pending litigation should be disregarded as a matter of law only if the witness giving the testimony is a party to the action. Contradictory testimony given by a nonparty witness is considered and weighed by the trier of fact and may be taken into account by the trier of fact when determining credibility. See *Osborn, supra*.

Mertz is not a party to the instant case. The Court of Appeals should not have disregarded Mertz' testimony as a matter of law and should have given deference to the district court's finding of fact that Mertz was told about the needles prior to the search.

## Probable Cause for Search

[6] When we consider Mertz' testimony that Dalland told him about the needles before the search, we conclude that the district court did not err in overruling Dalland's motion to suppress and admitting the evidence obtained from the search of the vehicle. Although probable cause was established for different reasons than stated by the court, we conclude there was probable cause for the search. "[A] correct result will not be set aside merely because the lower court applied the wrong reasoning in reaching that result." *State v. Chiroy Osorio*, 286 Neb. 384, 389, 837 N.W.2d 66, 70 (2013).

[7,8] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures. *State v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013). But a warrantless search of a vehicle is permissible upon probable cause that the vehicle contains contraband. See *California v. Carney*, 471 U.S. 386, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985).

[9,10] Probable cause is a flexible, commonsense standard that depends on the totality of the circumstances. *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011). Probable cause to search requires that the known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that contraband or evidence of a crime will be found. *J.P. v. Millard Public Schools*, 285 Neb. 890, 830 N.W.2d 453 (2013).

[11,12] In the instant case, a critical factor in the probable cause analysis is when Mertz learned about the needles in Dalland's vehicle. The district court made a finding of fact that Mertz learned about the needles before he began to search Dalland's vehicle. In reviewing findings of fact, we "[do] not reweigh or resolve conflicts in the evidence, but will uphold the trial court's findings of fact unless those findings are clearly erroneous." *State v. Thompson*, 244 Neb. 189, 192, 505 N.W.2d 673, 676 (1993). Additionally, we resolve evidentiary conflicts in favor of the successful party, who is entitled to "every reasonable inference deducible from the evidence." See *State v. Pullens*, 281 Neb. 828, 837, 800 N.W.2d 202, 214 (2011).

The district court was presented with two plausible but conflicting accounts of the events surrounding the search of Dalland's vehicle. Both Dalland and Dahl testified that Mertz asked about the needles after he entered the vehicle to perform the search. But Mertz stated at several points throughout his testimony that he learned the vehicle contained needles used for methamphetamine *before* he searched the vehicle. On cross-examination, Dalland quoted from the police report, without offering it into evidence, to "refresh [Mertz'] recollection" whether Dalland told him about the needles before or after starting to search the vehicle. When so confronted, Mertz agreed his report stated that Dalland denied having any drugs or paraphernalia. But immediately thereafter, Mertz denied that he learned about the needles during the search of the vehicle and insisted that he asked about the needles while he was searching Dalland and before searching the vehicle. Mertz testified he was confident that he asked Dalland about the needles while he was searching Dalland's person because

Mertz had never searched an individual without asking about sharp objects such as needles.

The district court's decision to accept Mertz' version of the facts over that of Dalland and Dahl was not clearly erroneous. The weight and credibility of the testimony of these witnesses was for the trier of fact. See *Thompson, supra*. Mertz consistently testified that Dalland mentioned the needles before Mertz started to search the vehicle. We give due weight to the district court's determination that Mertz learned about the needles before he began to search Dalland's vehicle. See *In re Interest of Ashley W.*, 284 Neb. 424, 821 N.W.2d 706 (2012).

Since Mertz learned prior to searching Dalland's vehicle that it contained needles used for methamphetamine, Mertz could reasonably believe that he would find drug paraphernalia or other contraband in the vehicle. This reasonable belief was only strengthened by the fact that there was an odor of marijuana emanating from Dalland's person. The combination of the odor and Dalland's statement *prior to the search* that the vehicle contained needles used for methamphetamine supplied facts and circumstances sufficient to warrant a person of reasonable prudence in the belief that contraband would be found in the vehicle. The district court did not err in overruling Dalland's motion to suppress the evidence found as a result of the search of Dalland's vehicle and admitting that evidence at trial.

Because we find probable cause for the search based on the combined facts that Dalland smelled of burnt marijuana and that he admitted prior to the search of his vehicle to having needles in the vehicle, we do not reach the question whether the odor of marijuana emanating from Dalland was sufficient to establish probable cause.

## CONCLUSION

For the aforementioned reasons, we reverse the decision of the Court of Appeals and remand the cause with direction that the Court of Appeals issue a judgment affirming Dalland's conviction and sentence.

REVERSED AND REMANDED WITH DIRECTION.