IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. DOMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MATTHEW J. DOMAN, APPELLANT.

Filed March 24, 2015.    No. A-14-776.

Appeal from the District Court for Lancaster County: STEPHANIE F. STACY, Judge. Affirmed.

John S. Berry, of Berry Law Firm, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

INBODY, PIRTLE, and BISHOP, Judges.

PIRTLE, Judge.

### INTRODUCTION

Matthew Doman appeals the order of the district court for Lancaster County denying his motion to suppress evidence. After a stipulated trial to the court, Doman was found guilty of possession with intent to deliver a schedule I controlled substance and possession of a schedule II controlled substance.

### BACKGROUND

On March 27, 2012 the State of Nebraska filed a complaint alleging that, the day before, Doman possessed a schedule I controlled substance with intent to deliver, a class III felony and that he possessed a controlled substance, a class IV felony. The information was amended in

September 2012 to reflect that the schedule I controlled substance was marijuana and the schedule II controlled substance was cocaine.

On January 22, 2013, Matthew Doman filed a motion to suppress evidence connected with his arrest. He alleged there was no probable cause for his arrest or the search of his vehicle, and that his statements to law enforcement officers should be suppressed.

A hearing was held on the motion to suppress on April 30, 2013 and August 19, 2013. Christopher Bigsby, a trooper with the Nebraska State Patrol, testified regarding the events leading up to Doman's arrest. Bigsby testified to his experience and training in drug recognition and interdiction stops, specifically regarding drugs, recognition of drugs, and concealment techniques in passenger and commercial vehicles. Bigsby testified that he completed a 40-hour course offered by the Nebraska State Patrol which included training for the detection of marijuana. He testified that he has conducted hundreds of traffic stops which involved detecting the odor of marijuana.

Bigsby testified that on March 26, 2012, he was traveling westbound on Interstate 80 near mile marker 403. Bigsby saw a vehicle traveling eastbound exiting the interstate at 27th Street and noted the vehicle was clean, had out of state license plates, and was driven by a lone male who was traveling with the window partially down. Bigsby suspected the vehicle was a rental vehicle and noted that the type of vehicle was one that was typically more expensive to rent. He passed his observations to Trooper Henrichs and continued toward Seward for a scheduled court appearance.

Shortly thereafter, Bigsby received a call that he did not need to appear for court in Seward so he turned around and drove back to see whether he could locate the vehicle which had aroused his suspicions. Bigsby exited on 27th Street and saw what appeared to be the same vehicle parked, unoccupied, in the parking lot of the Cracker Barrel restaurant. The vehicle had an Illinois license plate and dispatch confirmed the vehicle was rented. Bigsby parked his cruiser a distance away from the vehicle, walked to the vehicle and looked inside. He noted duffle bags, fast food wrappers, and an air freshener. Bigsby stated that based upon his training and experience, air fresheners are often used to mask the odor of drugs.

Upon noting that the vehicle had a "lived-in look" Bigsby requested a drug detection dog and activated his in-car camera. Eventually a male, later identified as Doman, and a female, later identified as Nicole Banaszak, approached the vehicle. At that time, Bigsby moved his cruiser to the parking stall on the left side of the vehicle and rolled down his window. Bigsby did not turn on his lights or sirens, and the cruiser was parked so it was not blocking the van in any way. Bigsby testified that the driver could have put the vehicle in reverse and exited the parking lot at any time.

Banaszak entered the driver's seat and rolled down the window. Bigsby spoke to her through the cruiser's passenger window and asked if the vehicle was rented, and she confirmed that it was. He told the vehicle's occupants that he was not stopping them and they did not have to comply with his requests. He then asked to see the rental agreement and informed the occupants they were not required to provide him with the information. Banaszak made a motion to indicate she intended to retrieve it. As she did so, Bigsby exited and walked around the back of his cruiser and approached the window to accept the agreement she offered. Bigsby noted that

he detected a strong, overwhelming odor of raw marijuana emitting from the interior of the vehicle, and that he was familiar with the smell from his training and experience.

After detecting the odor of marijuana, Bigsby asked the vehicle's occupants for identification, and asked the driver to turn off the car. At that time Bigsby believed, based on his experience and training, that the odor of marijuana provided probable cause to search the vehicle and to detain Doman and Banaszak. Bigsby informed Doman and Banaszak that he intended to search the vehicle.

A short time later, Trooper Gordon Downing arrived with the drug detection dog, but the dog was not deployed. Downing conducted a search of Doman's person and told Bigsby that he found a small amount of marijuana, as well as a substance he believed to be cocaine.

A search of the cargo area of the vehicle revealed high grade marijuana in two bags; one was a shopping bag and the other was a black duffel bag labeled with Doman's initials. The approximate weight of the marijuana was 5.4 pounds.

Trooper Ryan Henrichs testified that he arrived on the scene and observed the position of the patrol car parked near the van and the canine unit also parked nearby. Henrichs testified that he too smelled the strong odor of marijuana as he stood near the van. Bigsby advised Doman of his rights, and Doman indicated that he understood his rights and was willing to continue speaking with the officers. Henrichs also advised Doman of his rights and Doman agreed to continue speaking with him. The in-car camera recorded Doman's advisement of his rights, the waiver of those rights, and the subsequent interview.

In an order filed January 13, 2014, the district court found that the initial contact with the occupants of the vehicle amounted to a first-tier consensual encounter which did not constitute a seizure which would trigger Fourth Amendment protections. The district court found the statements Doman made were not obtained in violation of the Constitution. The district court also found there was probable cause for the troopers to conduct a warrantless search of the vehicle. Thus the district court overruled Doman's motion to suppress.

The parties appeared for a stipulated bench trial before the district court on June 23, 2014. The district court found beyond a reasonable doubt that Doman was guilty of the charged crimes. On August 28, 2014 Doman was sentenced to imprisonment for a period of not less than 3 years nor more than 5 years for count I, and not less than 1 year nor more than 2 years, with the sentences to be served consecutively. Doman timely appealed.

## ASSIGNMENTS OF ERROR

Doman asserts the district court erred in holding that the trooper's interaction with Doman was a tier-one police-citizen encounter rather than a tier-two encounter which would have required the trooper to have reasonable suspicion for the stop. Doman also asserts the trooper did not have probable cause to search his vehicle.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether

those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determinations. *State v. Avey,* 288 Neb. 233, 846 N.W.2d 662 (2014).

ANALYSIS

*Initial Police-citizen Encounter.*

Doman asserts that the district court erred in holding that Doman's encounter with law enforcement was a consensual police-citizen encounter. We conclude that the district court did not err when it concluded that there was no seizure that would have triggered Fourth Amendment protections.

The Fourth Amendment to the U.S. Constitution and article I, Section 7 of the Nebraska Constitution guarantee against unreasonable searches and seizures. *State v. Avey,* 288 Neb. 233, 846 N.W. 662 (2014). To determine whether an encounter between an officer and a citizen reaches the level of a seizure under the Fourth Amendment, we employ the analysis set forth in *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630, (1993), and relied upon more recently in *State v. Avey, supra.*

> The first-tier of police-citizen encounters involves no restraint of the liberty of the citizen involved, but rather the voluntary cooperation of the citizen is elicited through non-coercive questioning. This type of contact does not rise to the level of a seizure and therefore is outside the realm of [F]ourth [A]mendment protection. . . . The second category, the investigative stop, is limited to brief, non-intrusive detention during a frisk for weapons or preliminary questioning. This type of encounter is considered a 'seizure' sufficient to invoke [F]ourth [A]mendment safeguards, but because of its less intrusive character requires only that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime. . . . The third type of police-citizen encounters, arrests, are characterized by highly intrusive or lengthy search or detention. The [F]ourth [A]mendment requires that an arrest be justified by probable cause to believe that a person has committed or is committing a crime.

*Id.*

In this case, the trial court stated that the evidence did not suggest the initial contact between Trooper Bigsby and Doman resulted in a Fourth Amendment seizure. Though Bigsby was operating his Nebraska State Patrol vehicle while in full uniform and carrying his service weapon, these facts alone do not prove that Doman was not "free to leave." The court considered the location of Bigsby's cruiser in relation to the rental vehicle and the fact that Bigsby's initial contact with Banaszak took place through the window while he was still seated in his car. The court also considered Bigsby's multiple assurances that Doman and Banaszak were not being stopped, so they were not required to speak with him or provide him with any information. In reviewing the totality of the circumstances, the district court concluded that from the initial contact the encounter was consensual, and was considered a tier-one police-citizen encounter

until the overwhelming odor of marijuana provided Bigsby with probable cause. We agree with this conclusion.

Doman asserts Bigsby engaged him in a tier-two stop without reasonable suspicion, thus his detention was unconstitutional. The Nebraska Supreme Court has held that a seizure does not occur simply by reason of the fact that a police officer approaches an individual, asks him or her for identification, and poses a few questions to that individual, so long as the officer does not indicate that compliance with his or her request is required and the questioning is carried on without interrupting or restraining the person's movement. *State v. Casillas,* 279 Neb. 820, 782 N.W.2d 882 (2010). A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. *State v. Avey, supra.*

The record shows Bigsby did not activate his lights or sirens in making contact with Doman and Banaszak. Doman and Banaszak were instructed that they were not being stopped, and they were not required to respond to Bigsby's requests for information. Bigsby's cruiser was not blocking the vehicle's ability to exit the parking lot, and Bigsby spoke to Doman and Banaszak through his passenger window. Bigsby did not exit the vehicle until it was clear that Banaszak was voluntarily providing the rental agreement for Bigsby's review.

Until Bigsby detected the overwhelming odor of drugs, Bigsby was engaging Doman and Banaszak in non-coercive questioning and eliciting their voluntary cooperation. He did not engage in any restraint of their liberty until the odor of drugs was detected. We conclude that the initial contact was a tier-one encounter which did not amount to a seizure, therefore Fourth Amendment protections were not triggered.

*Probable Cause.*

Doman also asserts the trial court lacked probable cause to search the vehicle because the odor of marijuana detected by law enforcement was not isolated to the vehicle.

Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to a few specifically established and well-delineated exceptions. *State v. Beal,* 21 Neb. App. 939, 846 N.W.2d 282 (2014). The warrantless search exceptions recognized by Nebraska courts included searches undertaken with consent, searches justified by probable cause, searches under exigent circumstances, inventory searches, searches of evidence in plain view, and searches incident to a valid arrest. *Id.* A warrantless search of a vehicle is permissible upon probable cause that the automobile contains contraband. *State v. Dalland,* 20 Neb. App. 905, 835 N.W.2d 95 (2013), *reversed on other grounds.*

Bigsby testified that he had probable cause to search the vehicle in this case because he smelled an overwhelming odor of raw marijuana. On appeal, Doman asserts Bigsby did not have probable cause because he did not isolate the smell to ensure that it was emanating from the vehicle, instead of from Doman or Banaszak.

Doman urges this court to follow the reasoning set forth in *State v. Dalland, supra*, and hold that the odor of a drug on an individual's person does not provide probable cause for the search of a vehicle. In finding there was no probable cause for the search of the vehicle, this court determined the officer lacked probable cause because the officer smelled marijuana

emanating from a person who was outside of the vehicle. In reviewing *State v. Dalland,* on a petition for further review, the Nebraska Supreme Court found there was probable cause for the search of the vehicle but specifically stated it was not addressing whether the smell of marijuana on a person established probable cause to search the vehicle. *State v. Dalland,* 287 Neb. 231, 842 N.W.92 (2014).

In this case, Bigsby detected the strong odor of marijuana "emitting from the interior of the vehicle." Unlike in *State v. Dalland,* here the occupants were confined to the vehicle's interior. The Nebraska Supreme Court has held that the smell of marijuana, standing alone, is sufficient to furnish probable cause for a warrantless search of a motor vehicle, where there is sufficient foundation as to the expertise of the officer making the search. *State v. Watts,* 209 Neb. 371, 307 N.W.2d 816 (1981). See also *State v. Ruzicka,* 202 Neb. 257, 274 N.W.2d 873 (1979) and *State v. Reha,* 12 Neb. App. 767, 686 N.W.2d 80 (2004).

There is ample evidence in the record to demonstrate Bigsby's experience and training in drug recognition and concealment techniques. He testified that this particular vehicle was suspicious and the contents visible from outside of the vehicle were the type often used in the transport of contraband or to conceal its presence. Given the officer's expertise in recognizing the odor of marijuana, the strong odor of marijuana detected during a tier-one police-citizen encounter furnished probable cause to search the vehicle.

## CONCLUSION

We find the district court did not err in overruling Doman's motion to suppress because he was not seized for Fourth Amendment purposes, and the officer had probable cause to search the vehicle.

AFFIRMED.