State of Nebraska, appellee, v.
Irvin D. Beal, appellant.
___ N.W.2d ___

Filed April 22, 2014.    No. A-12-1175.

1.  **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.
2.  **Police Officers and Sheriffs: Probable Cause.** Probable cause merely requires that the facts available to the officer would cause a reasonably cautious person to believe that the suspect has committed an offense; it does not demand any showing that this belief be correct or more likely true than false.
3.  **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. An officer's stop of a vehicle is objectively reasonable when the officer has probable cause to believe that a traffic violation has occurred.
4.  **Motor Vehicles.** Neb. Rev. Stat. § 60-399(2) (Reissue 2010) provides that all letters, numbers, printing, writing, and other identification marks upon a vehicle's license plates shall be kept clear and distinct so that they shall be plainly visible at all times.
5.  **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs.** Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. This investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. Also, the officer may run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are outstanding warrants for any of its occupants.
6.  ____: ____: ____. In order to continue to detain a motorist, an officer must have a reasonable, articulable suspicion that the person is involved in criminal activity beyond that which initially justified the stop.
7.  **Investigative Stops: Motor Vehicles: Police Officers and Sheriffs: Probable Cause.** To detain a motorist for further investigation past the time reasonably necessary to conduct a routine investigation incident to a traffic stop, an officer must have a reasonable, articulable suspicion that the motorist is involved in criminal activity unrelated to the traffic violation.
8.  **Investigative Stops: Police Officers and Sheriffs: Probable Cause.** Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances.

9. **Probable Cause: Words and Phrases.** Reasonable suspicion entails some minimal level of objective justification for detention; it is something more than an inchoate and unparticularized hunch—but less than the level of suspicion required for probable cause.

10. **Investigative Stops: Police Officers and Sheriffs: Probable Cause.** Regarding an officer's reasonable suspicion, factors that would independently be consistent with innocent activities may nonetheless amount to reasonable suspicion when considered collectively.

11. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government. These constitutional provisions do not protect citizens from all governmental intrusion, but only from unreasonable intrusions.

12. **Constitutional Law: Warrantless Searches: Search and Seizure.** Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to a few specifically established and well-delineated exceptions.

13. **Warrantless Searches.** The warrantless search exceptions recognized by Nebraska courts include searches undertaken with consent, searches justified by probable cause, searches under exigent circumstances, inventory searches, searches of evidence in plain view, and searches incident to a valid arrest.

14. **Motor Vehicles: Warrantless Searches: Probable Cause.** A warrantless search of a vehicle is permissible upon probable cause that the automobile contains contraband.

15. **Police Officers and Sheriffs: Probable Cause.** A law enforcement officer has probable cause to search when it is objectively reasonable.

16. **Search and Seizure.** A search is objectively reasonable when known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that he will find contraband or evidence of a crime.

17. **Probable Cause.** Probable cause depends on the totality of the circumstances.

18. **Criminal Law: Choice of Evils Defense.** The justification or choice of evils defense is codified in Nebraska at Neb. Rev. Stat. § 28-1407 (Reissue 2008). That statute specifies that conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged. The statute also mandates that a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

19. **Criminal Law: Choice of Evils Defense: Public Policy.** The justification or choice of evils defense authorized by Neb. Rev. Stat. § 28-1407 (Reissue 2008) reflects the Nebraska Legislature's policy decision that certain circumstances excuse conduct that would otherwise be criminal.

20. **Criminal Law: Choice of Evils Defense.** The justification or choice of evils defense operates to legally excuse conduct that would otherwise subject a person to criminal sanctions.

21. **Choice of Evils Defense.** If the harm which will result from compliance with the law is greater than that which will result from violation of it, a person is justified in violating it.

22. ____. The justification or choice of evils defense requires that a defendant (1) acts to avoid a greater harm; (2) reasonably believes that the particular action is necessary to avoid a specific and immediately imminent harm; and (3) reasonably believes that the selected action is the least harmful alternative to avoid the harm, actual or reasonably believed by the defendant to be certain to occur.

23. ____. For the justification or choice of evils defense to be factually available to a defendant, he or she must factually establish that his or her actions were efforts to prevent a specific and immediate harm to at least one reasonably identifiable person.

24. ____. A generalized belief, even if apparently well founded, that the alleged greater harm might occur and might involve an unidentified person is insufficient to supply a factual basis for application of the justification or choice of evils defense.

25. ____. Sincere belief and fervor, resulting in impatience with the alternative and frequently time-consuming process for change in a democracy subject to a constitution, do not supply a legal basis for the justification or choice of evils defense.

26. **Criminal Law: Choice of Evils Defense.** For the justification or choice of evils defense to be available, a defendant's responsive criminal conduct must relate only to an interest that the community is willing to recognize and that is not specifically denied recognition by the legal system.

27. **Sentences: Appeal and Error.** Sentences within statutory limits will be disturbed on appeal only if the sentences complained of were an abuse of judicial discretion.

28. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

29. **Sentences.** When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

30. ____. In imposing a sentence, the sentencing court is not limited to any mathematically applied set of factors.

31. ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Saunders County: Mary C. Gilbride, Judge. Affirmed.

Glenn A. Shapiro, of Schaefer Shapiro, L.L.P., for appellant.

Jon Bruning, Attorney General, and Nathan A. Liss for appellee.

IRWIN, MOORE, and BISHOP, Judges.

IRWIN, Judge.

# I. INTRODUCTION

Irvin D. Beal appeals his conviction and sentence for possession with intent to deliver marijuana, a Class III felony offense. On appeal, Beal challenges the district court's denial of his motion to suppress, the court's refusal to allow Beal to present evidence on his proposed defense of justification or choice of evils, and the sentence imposed. We find no merit to the assertions on appeal, and we affirm.

# II. BACKGROUND

The events giving rise to this case occurred on or about September 30, 2009. At approximately 10:30 that night, Officer Christopher Engel, a law enforcement officer for the Ashland Police Department, was in uniform in a marked patrol car in Ashland, Nebraska. He observed a van approaching him and "abruptly" slowing as it passed. Engel initially was unable to see a rear license plate on the van, and he followed the van to effect a traffic stop.

Engel testified that as he got closer to the van, he was able to observe there was a rear license plate, but that he was unable to read the plate. He testified that there was a "ball hitch" blocking part of the plate and also a license plate bracket that obscured the portion of the plate indicating what state the van was registered in. Engel activated his patrol car's emergency lights and conducted a traffic stop.

Engel testified that as he approached the van, he observed that the windows on the van had "blinds pulled down" and that he "could detect the odor of raw marijuana." Engel called for backup and made contact with the driver of the van, Christopher Ryan. Beal was a passenger in the van, as was a third individual.

Engel had Ryan accompany him to Engel's patrol car, where he questioned Ryan about the group's travel. According to Engel, Ryan was "vague with his answers" and provided "short vague answers when he was responding." Engel questioned Ryan about the other occupants of the van, and Ryan indicated

that they were "his friends, comrades," and that they were "acquaintances." Ryan was unable to accurately provide the second passenger's last name, although he was able to correctly identify Beal.

Engel issued a warning to Ryan for driving with an obscured rear license plate and "ran a records check . . . and completed a criminal history" on all three individuals. Engel then returned to Ryan the license and paperwork he had provided Engel, explained the warning citation to Ryan, and informed Ryan that Engel was waiting for information to come back from dispatch. Engel then made contact with Beal and the other passenger. Engel testified that because he had smelled marijuana, he was investigating and wanted to speak with the two passengers "to see if they knew who the driver was and to see where they were coming from, to see if their stories would match up or if they were different." Engel testified that the passengers' stories were "somewhat similar" to Ryan's, although the second passenger "just couldn't really answer" any questions, "didn't really know where they [had been]," and "really didn't have any idea what was going on." While speaking with the passengers, Engel observed air fresheners and four or five cell phones and again detected the odor of marijuana.

Another officer, Deputy Jeffrey Hermanson, arrived on the scene. Hermanson was a canine unit officer and had his canine with him. The record indicates that although the canine had previously been certified as a drug detection canine, its certification was not current on the date in question.

Engel then attempted to create a consensual encounter with the occupants of the van. Engel told Ryan that he was free to go and allowed Beal and the other passenger to return to the van. As Ryan was returning to the van, Engel asked if he would answer some additional questions. Engel testified that Ryan was not actually free to go and that Engel believed he "had enough indicators of criminal activity" to proceed with his investigation, but that he had been trained to attempt to secure a consensual encounter if possible.

Engel received information from dispatch indicating that all three occupants of the van had committed prior drug

violations and that Beal had "a history of prior weapons violations." Hermanson also heard this information dispatched over the radio.

Ryan initially indicated that "perhaps he would talk to" Engel, and Engel explained that he was going to ask for consent to search the van. Hermanson had approached the van to have Beal and the other passenger exit the van again so that the canine could be deployed around the van. During this process, Hermanson observed "something shiny" sticking out of Beal's boot, where Beal's pant leg was tucked into the boot. Hermanson testified that he issued several commands and questions to Beal, asking what the item in his boot was, and that Beal was unresponsive. Engel and Hermanson directed all three occupants to the ground and handcuffed them "for safety reasons." The object in Beal's boot was then determined to be "a cellophane baggy of marijuana."

A search of the van resulted in the discovery of 154.9 pounds of marijuana.

Prior to trial, Beal sought to suppress the evidence seized during the traffic stop. The court denied the motion to suppress, finding that Engel validly conducted a traffic stop based on the van's having an obscured rear license plate and that Engel had sufficient reason to suspect additional criminal activity based upon his observations during the traffic stop, warranting extending the stop and searching the van.

Prior to trial, the State sought a motion in limine to prevent Beal from presenting evidence or argument in support of a justification or choice of evils defense. At a hearing on the motion, Beal argued that he should be allowed to present evidence and argument that he was transporting the marijuana for distribution to a "buyers club" in New York and that the marijuana was for medicinal purposes for patients who would suffer a greater harm or evil from illness than the harm or evil of his possession with intent to distribute.

Beal made an offer of proof in support of his argument. In the offer of proof, Beal asserted that he would have testified that he had cofounded a nondenominational religious organization with a New York City tax number that runs a "cannabis Patients Registry" and works with a "Buyers Club" in New

York. Beal would have testified that his organization provides medicinal marijuana for patients with a medically diagnosed condition recognized to benefit from cannabis. Beal would have testified about other states' passing laws to permit medical marijuana use, about how marijuana is the best therapeutically active medicine for many conditions, and about how it is not addictive. He also would have testified that the marijuana seized in this case was for use by specific individuals known by him to be afflicted with AIDS and cancer and that marijuana provides treatment for these patients. He also would have testified that the marijuana otherwise available to his organization was not suitable. In the offer of proof, Beal also asserted that a doctor would have testified about the medicinal benefits of marijuana.

The district court granted the motion in limine and ordered that Beal would not be allowed to present evidence or argument in support of his justification or choice of evils defense.

After a stipulated bench trial, the district court found Beal guilty of possession with intent to distribute marijuana. The court sentenced Beal to 48 to 72 months' imprisonment. This appeal followed.

## III. ASSIGNMENTS OF ERROR

On appeal, Beal assigns as error that the district court erred in denying his motion to suppress, in refusing to allow him to present evidence and argument in support of his justification or choice of evils defense, and in imposing an excessive sentence.

## IV. ANALYSIS

### 1. Motion to Suppress

Beal first asserts that the district court erred in denying his motion to suppress. He asserts that there was not probable cause for the initial stop, was not sufficient cause to expand the initial stop, and was not probable cause for a search of the van. We find no merit to these assertions.

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State*

*v. Au*, 285 Neb. 797, 829 N.W.2d 695 (2013). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Id*.

### (a) Initial Stop

Beal first asserts that there was no probable cause for the initial traffic stop. The evidence indicates that Engel observed a traffic violation, which provides sufficient probable cause for the initial stop. We find no merit to Beal's assertions on appeal.

[2,3] Probable cause merely requires that the facts available to the officer would cause a reasonably cautious person to believe that the suspect has committed an offense; it does not demand any showing that this belief be correct or more likely true than false. *Id*. A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *Id*. An officer's stop of a vehicle is objectively reasonable when the officer has probable cause to believe that a traffic violation has occurred. *State v. Magallanes*, 284 Neb. 871, 824 N.W.2d 696 (2012), *cert. denied* ___ U.S. ___, 133 S. Ct. 2359, 185 L. Ed. 2d 1082 (2013).

In the present case, Engel testified that when the van first passed him in traffic, Engel was unable to see a rear license plate on it and he followed it to effect a traffic stop. As he got closer to the van, he was able to observe that there was a rear license plate, but he was unable to read the plate. Engel testified that there was a "ball hitch" blocking part of the plate and also a license plate bracket that obscured the portion of the plate indicating what state the van was registered in.

[4] Neb. Rev. Stat. § 60-399(2) (Reissue 2010) provides that "[a]ll letters, numbers, printing, writing, and other identification marks upon [a vehicle's license] plates . . . shall be kept clear and distinct . . . so that they shall be plainly visible at all times . . . ."

Engel's testimony demonstrates that he observed the rear license plate of the van not to be in compliance with § 60-399(2). Because Engel observed a traffic violation, he had probable cause to stop the van.

Beal's argument on appeal concerning probable cause to stop the van is entirely based on an assertion that Engel's testimony was not trustworthy. Beal elicited testimony at trial in an attempt to call Beal's veracity into question. Issues of credibility, however, are not resolved by the appellate court, and we will not pass on the credibility of witnesses or reweigh the evidence. See *State v. Ruegge*, 21 Neb. App. 249, 837 N.W.2d 593 (2013). As such, we find this argument to be without merit.

### (b) Expansion of Stop

Beal next asserts that the district court erred in finding that there was reasonable, articulable suspicion to expand the initial traffic stop. Based on Engel's observations during the traffic stop, including detecting the odor of marijuana, we find that there was reasonable, articulable suspicion, and we find no merit to Beal's assertion.

[5] Once a vehicle is lawfully stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011); *State v. Morissey*, 19 Neb. App. 590, 810 N.W.2d 195 (2012). This investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, and asking the driver about the purpose and destination of his or her travel. *Id*. Also, the officer may run a computer check to determine whether the vehicle involved in the stop has been stolen and whether there are outstanding warrants for any of its occupants. *State v. Howard, supra*.

In the present case, Engel was justified in conducting an investigation reasonably related in scope to the circumstances of the initial stop. He was justified in asking Ryan, the driver, for his operator's license and registration; having Ryan

accompany him to the patrol car; and asking Ryan about the purpose and destination of his travel.

[6,7] In order to continue to detain a motorist, an officer must have a reasonable, articulable suspicion that the person is involved in criminal activity beyond that which initially justified the stop. *State v. Prescott*, 280 Neb. 96, 784 N.W.2d 873 (2010). To detain a motorist for further investigation past the time reasonably necessary to conduct a routine investigation incident to a traffic stop, an officer must have a reasonable, articulable suspicion that the motorist is involved in criminal activity unrelated to the traffic violation. *State v. Draganescu*, 276 Neb. 448, 755 N.W.2d 57 (2008).

[8] Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances. *State v. Prescott, supra*; *State v. Draganescu, supra*. Courts must determine this on a case-by-case basis. *Id*.

[9,10] Reasonable suspicion entails some minimal level of objective justification for detention; it is something more than an inchoate and unparticularized hunch—but less than the level of suspicion required for probable cause. *Id*. Regarding an officer's reasonable suspicion, the Nebraska Supreme Court has previously noted that factors that would independently be consistent with innocent activities may nonetheless amount to reasonable suspicion when considered collectively. *State v. Draganescu, supra*.

In the present case, Engel testified that he detected the odor of raw marijuana when he approached the van, that the van's windows were covered with drawn blinds, and that Ryan provided vague and short answers concerning his travel. Although Ryan had indicated that the other occupants of the van were "his friends, comrades," he was unable to accurately provide the second passenger's last name.

Upon making contact with Beal and the other passenger of the van, after issuing a warning to Ryan, Engel discovered that although their stories were "somewhat similar," the second passenger did not seem to know where they had been or "have

any idea what was going on." Engel observed air fresheners and four or five cell phones and again detected the odor of marijuana.

Engel also received information from dispatch indicating that all three occupants of the van had committed prior drug violations and that Beal had "a history of prior weapons violations."

The record indicates that all of these observations were made prior to Engel's initially indicating to Ryan that he was free to go and prior to Engel's attempt to secure a consensual encounter. Those observations were sufficient to support a reasonable, articulable suspicion of criminal activity exclusive of the basis for the initial traffic stop, and they supported a continued detention of the van's occupants. We find no merit to Beal's assertions to the contrary.

### (c) Search

Finally, Beal asserts that there was not sufficient probable cause to search the van. We disagree.

[11-13] The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government. *State v. Podrazo*, 21 Neb. App. 489, 840 N.W.2d 898 (2013). These constitutional provisions do not protect citizens from all governmental intrusion, but only from unreasonable intrusions. *Id*. Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to a few specifically established and well-delineated exceptions. See *State v. Podrazo, supra*. The warrantless search exceptions recognized by Nebraska courts include searches undertaken with consent, searches justified by probable cause, searches under exigent circumstances, inventory searches, searches of evidence in plain view, and searches incident to a valid arrest. *Id*.

[14-17] A warrantless search of a vehicle is permissible upon probable cause that the automobile contains contraband. *State v. Dalland*, 20 Neb. App. 905, 835 N.W.2d 95 (2013), *reversed on other grounds* 287 Neb. 231, 842 N.W.2d

92 (2014). A law enforcement officer has probable cause to search when it is objectively reasonable. *Id*. A search is objectively reasonable when known facts and circumstances are sufficient to warrant a person of reasonable prudence in the belief that he will find contraband or evidence of a crime. *Id*. Probable cause depends on the totality of the circumstances. *Id*.

In this case, Engel had probable cause to search the van. As noted above, he had detected the odor of raw marijuana, received objectively suspicious responses from the driver and passengers of the van, observed air fresheners and numerous cell phones, observed the drawn blinds on the windows of the van, and received information from a routine records check indicating that all of the occupants had a history of drug violations and that Beal had a history of weapons violations. The odor of marijuana was also detected by Hermanson, the other officer on the scene. Additionally, when Hermanson had Beal and the other passenger exit the van so that the canine could be deployed around it, Hermanson observed "something shiny" sticking out of Beal's boot, and after Beal refused to respond to inquiries and commands concerning the shiny object, all three occupants were patted down for officer safety. Marijuana was discovered on the persons of both Beal and the driver when they were patted down. There is no merit to Beal's assertion that there was not sufficient probable cause to support searching the van.

### (d) Conclusion on Motion to Suppress

Because Engel observed a traffic violation, he had probable cause to make the initial stop. During the traffic stop, Engel's observations gave rise to a reasonable, articulable suspicion of criminal activity that justified expanding the scope of the stop and continuing to detain the occupants of the van. The observations also gave rise to probable cause sufficient to justify a search of the van, which led to the discovery of nearly 155 pounds of marijuana. Beal's first assigned error is meritless.

## 2. Justification or Choice of Evils
## and Motion in Limine

### (a) Arguments Raised by Parties

Beal next challenges the district court's granting of the State's motion in limine, precluding Beal from presenting testimony or argument on his proposed justification or choice of evils defense. The choice of evils defense was factually unavailable to Beal on the record presented to us, and we find no merit to his assertion that the district court erred.

[18] The justification or choice of evils defense is codified in Nebraska at Neb. Rev. Stat. § 28-1407 (Reissue 2008). That statute specifies that conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged, see § 28-1407(1)(a). The statute also mandates that "[a] legislative purpose to exclude the justification claimed does not otherwise plainly appear," see § 28-1407(1)(c).

[19-21] The justification or choice of evils defense authorized by § 28-1407 reflects the Nebraska Legislature's policy decision that certain circumstances excuse conduct that would otherwise be criminal. *State v. Cozzens*, 241 Neb. 565, 490 N.W.2d 184 (1992). Therefore, the justification or choice of evils defense operates to legally excuse conduct that would otherwise subject a person to criminal sanctions. *Id*. "'[I]f the harm which will result from compliance with the law is greater than that which will result from violation of it, [a person is] justified in violating it.'" *Id*. at 571, 490 N.W.2d at 189, quoting 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 5.4 (1986).

[22] The justification or choice of evils defense requires that a defendant (1) acts to avoid a greater harm; (2) reasonably believes that the particular action is necessary to avoid a specific and immediately imminent harm; and (3) reasonably believes that the selected action is the least harmful alternative to avoid the harm, actual or reasonably believed by the defendant to be certain to occur. *State v. Cozzens, supra*.

In *State v. Cozzens*, the Nebraska Supreme Court discussed both legal and factual availability of the justification or choice of evils defense in the context of an appeal by defendants convicted of criminal trespass when they sought to block lawful access to an abortion clinic.

[23,24] The court discussed the proposition that for the defense to be factually available to a defendant, he or she must factually establish that his or her actions were efforts to prevent a specific and immediate harm to at least one reasonably identifiable person. *Id*. A generalized belief, even if apparently well founded, that the alleged greater harm might occur and might involve an unidentified person is insufficient to supply a factual basis for application of the justification or choice of evils defense. See *id*.

[25,26] The court also discussed the propositions that for the defense to be legally available to a defendant, the defendant's conduct must be responsive to a legally recognized harm, and that the defense may not be used to justify or excuse criminal activity as an expression of disagreement with decisions by a branch of government. *Id*. Sincere belief and fervor, resulting in impatience with the alternative and frequently time-consuming process for change in a democracy subject to a constitution, do not supply a legal basis for the justification or choice of evils defense. *Id*. In other words, for the defense to be available, a defendant's responsive criminal conduct must relate only to an interest that the community is willing to recognize and that is not specifically denied recognition by the legal system. *Id*.

In *State v. Cozzens*, 241 Neb. 565, 490 N.W.2d 184 (1992), the Supreme Court concluded that the justification or choice of evils defense was factually unavailable to all but one of the defendants. The court noted that only one of the defendants had established that she had personal knowledge, gained through her contacts with women who were about to enter the clinic, that abortions were likely to be performed on the morning when the group of defendants attempted to block access to the clinic. It was that one defendant's knowledge of specifically identifiable women who were attempting to enter the clinic to receive an abortion that provided factual

availability of the defense. *Id.* The remaining defendants established only a general belief that abortions were performed, and none knew any particular woman who was about to enter the clinic for the purpose of receiving an abortion. The remaining defendants, therefore, were not acting to prevent a specific and immediately imminent harm to a particular person. *Id.*

We conclude that the justification or choice of evils defense was similarly factually unavailable to Beal based on the record presented to us. In support of his objection to the State's motion in limine, Beal presented a written offer of proof. That offer of proof indicated that if allowed, he and a medical doctor would both have presented testimony in support of Beal's choice of evils defense. The offer of proof indicated that Beal would have testified that he had cofounded a nondenominational religious organization, with a New York City tax number, that runs a "cannabis Patients Registry" and works with a "Buyers Club" in New York. Beal would have testified that his organization provides medicinal marijuana for patients with a medically diagnosed condition recognized to benefit from cannabis. Beal would have testified about other states' passing laws to permit medical marijuana use, about how marijuana is the best therapeutically active medicine for many conditions, and about how it is not addictive.

According to Beal's offer of proof, he also would have testified that the marijuana seized in this case was for use by specific individuals known by him to be afflicted with AIDS and cancer and that marijuana provides treatment for these patients. Beal did not, however, identify any such individuals or indicate in his offer of proof that any of them would have testified on his behalf. He also indicated in his offer of proof that he would have testified that the marijuana otherwise available to his organization was not suitable. In the offer of proof, Beal also asserted that a doctor would have testified about the medicinal benefits of marijuana.

In his offer of proof, Beal did not identify any particular individuals who were at risk of immediately imminent harm. He did not establish that he was acting to prevent infliction of a specific and immediate harm to a reasonably identifiable

victim. Rather, he demonstrated general moral opposition to illegalization of marijuana because of his belief in its medicinal benefits. Although not a published opinion, and therefore not citable as authority, we note that similar testimony was not sufficient to support factual availability of the defense in *State v. Thompson*, No. A-98-1371, 2000 WL 758767 at *6 (Neb. App. June 13, 2000) (not designated for permanent publication), wherein the defendant testified that "if the people he knew in the 'New York Buyer's Club' were not provided with marijuana, they would suffer inescapable harm to their bodies." We held this did not demonstrate personal knowledge of any specific person who would use the marijuana. *Id*.

In this case, we decline to specifically address the question of whether the justification or choice of evils defense is legally available to a defendant stopped with nearly 155 pounds of marijuana and purporting to have been transporting it to patients in need of its medicinal benefits. We conclude that Beal's offer of proof was insufficient to demonstrate the factual availability of the defense, and we find no error in the district court's grant of the State's motion in limine to prevent Beal from adducing testimony or argument about it.

### (b) Requirement of Force

We have concluded that the justification or choice of evils defense that Beal attempted to raise in this case is factually unavailable and have declined to address the question of whether it could be legally available to a situation like the present one. The concurrence disagrees with our decision not to reach the issue of whether the defendant's use of force should be a legal prerequisite to the availability of the choice of evils defense. We have declined to reach that question for several reasons, including that the issue has not been raised by the parties, that the issue would be one of first impression and contrary to the guidance in Nebraska Supreme Court precedents, and that stretching our analysis to reach the issue would require resolution of competing rules of statutory analysis. It is because none of that is necessary to reach the same result— that the defense was properly rejected in this case—that we decline to do so.

Initially, we note that the issue of whether the defendant's use of force is a legal prerequisite to application of the choice of evils defense has not been raised by the parties in this case. Although the State did argue on appeal that that defense should be found legally unavailable, the State's argument in that regard was solely on the basis of an assertion that the laws prohibiting the possession of marijuana evidence a legislative intent that the choice of evils defense not be applicable to possession of marijuana in any situation. The State did not make any argument to this court that the defense should be unavailable because Beal did not use any force, as the concurrence would conclude. Indeed, during oral argument, counsel for the State specifically answered a question posed by the court by indicating that the State did not believe the defendant's use of force was a legal prerequisite and that the State was not asserting such a proposition.

There is no prior judicial pronouncement in this state to indicate that the defendant's use of force is a legal prerequisite to application of the choice of evils defense. The concurrence has cited to no such authority, despite the Nebraska Supreme Court's having discussed the choice of evils defense and specifically delineated the elements that must be shown to successfully raise the defense. *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003); *State v. Wells*, 257 Neb. 332, 598 N.W.2d 30 (1999); *State v. Cozzens*, 241 Neb. 565, 490 N.W.2d 184 (1992). The Supreme Court's iteration of those elements has never included the defendant's use of force. *Id*.

Our review of the Nebraska Supreme Court's jurisprudence involving the choice of evils defense and other justification defenses in prior cases demonstrates that the Supreme Court has consistently chosen to find the defense factually unavailable whenever possible and not to address the defendant's use of force as a legal prerequisite. See, e.g., *State v. Mowell, supra* (defense found factually unavailable because of inadequate showing of imminent risk of harm and specific declination to address legal availability); *State v. Wells, supra* (defense found factually unavailable for inadequacy of offer of proof on imminent risk of harm and without discussion of use of force as legal prerequisite); *State v. Graham*, 201 Neb. 659,

271 N.W.2d 456 (1978) (defense found factually unavailable for inadequate showing of imminent risk of harm and without discussion of use of force as legal prerequisite).

Indeed, in *State v. Mowell, supra*, the Nebraska Supreme Court was presented with a factual situation wherein the defendant attempted to raise the choice of evils or justification defense in a factual situation where the defendant was not trying to justify the use of any force. In that case, the defendant was charged with second degree murder, use of a weapon, and possession of a weapon. The defendant attempted to raise the choice of evils defense specifically as a defense to the possession of a weapon charge, arguing he was justified in possessing the weapon for self-defense because he was in fear for his life. The Supreme Court iterated the specific elements necessary to demonstrating the choice of evils defense, never mentioning the defendant's use of force as a legal prerequisite. *Id.* The court declined to address whether the defense could be legally available, focusing instead on rejecting the defense as factually unavailable because there was an insufficient showing of imminent risk of harm. *Id.* If the conclusion of the concurrence is correct and the defendant's use of force is a legal prerequisite, it would appear that the Supreme Court could have specifically found the defense legally unavailable in that case because possession of a weapon would not constitute the use of force; the court did not need to do so to reach its result, and it accordingly did not do so.

Finally, in order to reach the conclusion that the concurrence would urge, we would be required to engage in discussion of rules of statutory construction and to resolve potential conflicts in those rules. The concurrence correctly points out that the choice of evils defense at issue in this case is in a section of the Nebraska Revised Statutes generally pertaining to justification for the use of force. The concurrence correctly points out that nearly every *other* statute in the vicinity in the statutes includes in its title or in its text a reference to the use of force. Notably, however, § 28-1407 specifically does not include a reference to the use of force either in its title or in its text, and none of the other specific justification statutes referenced by the concurrence are implicated in the present case.

It is undoubtedly correct, as the concurrence notes, that statutory language is to be given its plain and ordinary meaning and that courts are not to read into a statute something that is not there or read anything plain and direct out of the statute. See, *State v. Sikes*, 286 Neb. 38, 834 N.W.2d 609 (2013); *State v. Medina-Liborio*, 285 Neb. 626, 829 N.W.2d 96 (2013). In this case, however, the plain and ordinary meaning of the words actually in § 28-1407 does not include any reference to the defendant's use of force. The title of § 28-1407 does not refer to the defendant's use of force. Although the surrounding statutes do include such references, it is not apparent that the plain and ordinary meaning or the plain and direct language of § 28-1407, standing on its own, makes a defendant's use of force a legal prerequisite to application of § 28-1407.

The concurrence correctly notes that the definitions section of Neb. Rev. Stat. § 28-1406(4) (Reissue 2008) defines "[a]ctor" to mean "any person who uses force." A conclusion that this definition necessarily means that the defendant's use of force is a legal prerequisite to application of the choice of evils defense found specifically in § 28-1407, however, has never been espoused by the Nebraska Supreme Court. Such a reading would also suggest that a general justification or choice of evils defense would be legally unavailable in a variety of situations where the defendant does not engage in the use of force, including the factual situation discussed above in *State v. Mowell*, 267 Neb. 83, 672 N.W.2d 389 (2003), or in a hypothetical situation where a defendant has attempted to flee a potential kidnapper and has trespassed on private property to hide and procure safety, all without using force.

While it may well be true that the Supreme Court would conclude that the defendant's use of force is a legal prerequisite in any situation, and regardless of whether any of the statutory provisions specifically referring to the use of force are implicated, because the Supreme Court has never done so and has, in fact, elected on multiple occasions to find the defense factually unavailable without discussing legal availability, we conclude that it would be inappropriate for us to reach such a conclusion in this case. This is especially so because there is

no need for us to raise and resolve such an issue to reach the conclusion in this case.

The concurrence has not taken issue with the conclusion that the choice of evils defense is factually unavailable in this case or the conclusion that the district court properly sustained the State's motion in limine. As such, it is apparent that there is no disagreement that the factual unavailability conclusion is a correct way to reach the result of affirming the decision of the district court. Because that conclusion is in accordance with the arguments raised by the parties, is consistent with prior Nebraska Supreme Court jurisprudence, and does not require us to sua sponte raise an issue, engage in analysis of potentially conflicting rules of statutory analysis, and make the present case one of first impression unnecessarily, we decline to do so.

### 3. Excessive Sentence

Finally, Beal asserts that the district court imposed an excessive sentence. Beal's sentence was within statutory limits, and there is no apparent abuse of discretion. This assigned error is meritless.

[27,28] Sentences within statutory limits will be disturbed on appeal only if the sentences complained of were an abuse of judicial discretion. *State v. Podrazo*, 21 Neb. App. 489, 840 N.W.2d 898 (2013). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

[29-31] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id*. In imposing a sentence, the sentencing court is not limited to any mathematically applied set of factors. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and

all the facts and circumstances surrounding the defendant's life. *Id.*

Possession of marijuana with intent to deliver is a Class III felony offense. See Neb. Rev. Stat. §§ 28-405(c)(10) [Schedule I] (Cum. Supp. 2009) and 28-416(2)(b) (Reissue 2008). A Class III felony offense is punishable by 1 to 20 years' imprisonment, a fine of $25,000, or both. Neb. Rev. Stat. § 28-105 (Reissue 2008).

Beal was sentenced to 48 to 72 months' imprisonment. This sentence is well within the statutory limits, with the maximum portion of Beal's sentence being less than one-third of the possible maximum sentence. Beal has presented no argument on appeal to demonstrate how this sentence, well within the statutory limits, is an abuse of discretion, other than to assert that he was 65 years old at the time of sentencing, has been a lifelong activist, and received scores on an evaluation consistent with being amenable to probation and unlikely to present supervision problems.

Beal's presentence investigation report indicates a long criminal history, including a long history of disregard for drug laws, starting in 1967. Since that time, Beal has been convicted on at least nine occasions and in at least five different states for violation of a variety of drug laws. Beal has received sentences of jail and prison time, probation, and fines, but none of these avenues have served to deter him from continuing to disregard drug laws. Indeed, the presentence investigation report indicates that in January 2011, less than 16 months after the stop giving rise to the present case, Beal was caught in possession of 169 pounds of marijuana in Wisconsin. Beal's "activism" reflects a continual disregard for drug laws across the country. Beal's criminal history is not confined solely to drug offenses, however. He also has prior convictions for reckless endangerment and destruction of property.

On the record presented, the district court's sentence of 48 to 72 months' imprisonment is not an abuse of discretion for this conviction of possessing nearly 155 pounds of marijuana with intent to deliver. This assigned error is meritless.

## V. CONCLUSION

We find no merit to Beal's assertions on appeal. We affirm.

Affirmed.

Bishop, Judge, concurring.

I concur with the majority opinion affirming the district court's decision and sentence in this matter. However, I write separately to address the justification or choice of evils defense that Beal sought to raise at his bench trial. I agree that the trial court was correct to deny this defense to Beal; however, I disagree with the majority's analysis on this issue and have concerns that it will perpetuate continued attempts to raise this defense in similar circumstances when, in my opinion, the defense is legally unavailable for individuals charged with possession with intent to deliver marijuana.

The majority concludes that the defense was "factually unavailable to Beal" and declines to address whether the defense was "legally unavailable" and whether the "use of force [or threat of force] is [necessary as] a legal prerequisite to application of the . . . defense." It seems to me that if the statutes pertaining to this defense specifically require "use of force," then the justification defense is legally unavailable to a defendant charged with possession of marijuana with intent to deliver where it is conceded there has been no use of force by that defendant in committing the offense. The majority in this case, like that in the unpublished case from this court referred to by the majority, *State v. Thompson*, No. A-98-1371, 2000 WL 758767 (Neb. App. June 13, 2000) (not designated for permanent publication), concludes that the defense is factually unavailable to the defendant, in this case because "Beal did not identify any particular individuals who were at risk of immediately imminent harm" and Beal "did not establish that he was acting to prevent infliction of a specific and immediate harm to a reasonably identifiable victim. Rather, he demonstrated general moral opposition to illegalization of marijuana because of his belief in its medicinal benefits." My concern is that trial courts and litigants may view this decision, along with *Thompson*, as suggesting that the justification defense may have merit in these cases if a proper factual basis exists. Based on the plain language of

our statutes, I do not believe our Legislature has authorized an application of the justification statutes to marijuana possession offenses.

The justification statutes fall under chapter 28 (titled "Crimes and Punishments"), article 14 (titled "Noncode Provisions"), at subpart (b) under the heading "Justification for Use of Force," and can be found in Neb. Rev. Stat. §§ 28-1406 through 28-1416 (Reissue 2008 & Cum. Supp. 2012). Section 28-1406(4) states that "[a]ctor shall mean any person *who uses force* in such a manner as to attempt to invoke the privileges and immunities afforded him by sections 28-1406 to 28-1416, except any duly authorized law enforcement officer of the State of Nebraska or its political subdivisions." (Emphasis supplied.) Section 28-1407(1) states in relevant part, "Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if: (a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged." Section 28-1409 is titled "Use of force in self-protection," § 28-1410 is titled "Use of force for protection of other persons," § 28-1411 is titled "Use of force for protection of property," § 28-1412 is titled "Use of force in law enforcement," and § 28-1413 is titled "Use of force by person with special responsibility for care, discipline, or safety of others." Given that use of force is found in the heading of the statutory section on justification, in the definition of "actor," and throughout the justification statutes, I would affirm the trial court's denial of this defense to Beal, but on the ground that the defense is legally unavailable to a defendant charged with possession of marijuana with intent to deliver.

The Nebraska Supreme Court recently reminded us that "[i]t is not within the province of the courts to read a meaning into a statute that is not there *or to read anything direct and plain out of a statute*." *State v. Medina-Liborio*, 285 Neb. 626, 631, 829 N.W.2d 96, 100 (2013) (emphasis supplied). Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *State v. Sikes*, 286 Neb. 38,

834 N.W.2d 609 (2013). If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. *State v. Bossow*, 274 Neb. 836, 744 N.W.2d 43 (2008). I do not see how we can read "use of force" or "[a]ctor shall mean any person who uses force," see § 28-1406(4), out of §§ 28-1406 through 28-1416. This is a marijuana possession with intent to deliver case. It does not involve the use of force, and accordingly, the "Justification for Use of Force" statutes are legally unavailable to Beal. In my opinion, that should be the end of our judicial inquiry on that issue.

————————

State of Nebraska, appellee, v.
Christopher D. Elliott, appellant.
___ N.W.2d ___

Filed April 22, 2014.    No. A-13-522.

1. **Sentences: Appeal and Error.** A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court.
2. **Statutes.** Statutory language is to be given its plain and ordinary meaning.
3. ____. If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning.
4. ____. It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.
5. **Criminal Attempt: Weapons: Sentences.** Attempted use of a deadly weapon to commit a felony is not a crime defined in Neb. Rev. Stat. § 28-1205 (Cum. Supp. 2012), and therefore, it does not carry a mandatory consecutive sentence.
6. **Sentences.** It is within the discretion of the trial court to direct that sentences imposed for separate crimes be served consecutively.
7. ____. The test of whether consecutive sentences may be imposed under two or more counts charging separate offenses, arising out of the same transaction or the same chain of events, is whether the offense charged in one count involves any different elements than an offense charged in another count and whether some additional evidence is required to prove one of the other offenses.

Appeal from the District Court for Lancaster County: Steven D. Burns, Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, and Scott P. Helvie for appellant.